## NOLTE IRR. CO. v. WILLIS.
### No. 5607.

Court of Civil Appeals of Texas. Amarillo.
April 24, 1944.

Rehearing Denied May 22, 1944.

C. A. Lord, of Beaumont, for appellant.

Llewellyn & Dougharty, of Liberty, and Strong & Moore, of Beaumont, for appellee.

HEARE, Justice.

The appellant, Nolte Irrigation Company, sought judgment against the appellee, B. H. Willis, for permanent mandatory injunction which would require the appellee to remove certain dams and embankments theretofore built and being maintained by the appellee, or to make and maintain adequate openings and spillways in each of

them, so that the water impounded and retained by the dams and embankments would not interfere with the operation of the appellant's irrigation canal system. The appellant alleged that these dams and embankments were obstructing the natural drainage of surface waters and as a consequence resulted in (1) damage, and a continuing threat of further damage, to the appellant's wooden flume, known as its Ardoin flume, by causing it to buckle and break loose from its foundation, (2) damage, and a continuing threat of further damage, to the levees of appellant's irrigation canal and by causing them to be softened and to break in places, and (3) damage, and a continuing threat of further damage, to the bed of appellant's irrigation canal because of the introduction therein of "surface-water" moss which, because of its rapid growth, is difficult to remove and causes serious injury to irrigation canals. The appellant further alleged that the appellee had created and was maintaining the conditions complained of in violation of the statutes and laws of Texas; that the appellee has never procured from the Board of Water Engineers a permit authorizing him to impound the waters which the appellant alleged were causing the injuries, and the threat of further injuries, to the appellant's property.

The case was tried before the court without a jury and the court denied the relief of permanent mandatory injunction sought by the appellant. Upon request, the trial court filed findings of fact and conclusions of law. Although these findings are somewhat lengthy, yet they set out the facts of the case and we deem it necessary to set them out in this opinion. They are:

"Findings of Fact

"1. I find that on T. & N. O. Section No. 2 there is located a dam or embankment identified as the Peeler Dam, that on T. & N. O. No. 13 there is a similar dam or embankment known as No. 13 Dam, and that on T. & N. O. No. 16 there is a similar dam or embankment known as No. 16 Dam; that connecting with the No. 16 Dam or running in a general northerly direction to a point near the north line of said Section 16 are two levees creating an artificial lake within said Section 16 of approximately 118.2 acres; that north of said Section 16 and extending in a general northwesterly direction across the Edwards Survey, H. T. & B. 8 and the E. W. Wag-

goner is a natural depression generally known and identified as a marsh, sometimes called Crooked Marsh and sometimes Ardoin Marsh, and that said No. 16 Dam is within said Marsh; that beginning in T. & N. O. Section 13 and extending Northward there is another natural depression, or gully, identified as Hackberry Gully and that the Peeler Dam and No. 13 Dam are located within said gully. I further find that in each of said dams the defendant has heretofore constructed, for the purpose of controlling flood waters, certain drains and/or spillways, and that said drains and/or spillways are in fact adequate for the control of normal rainfall within the watershed of said marsh and gully; that is to say that said drains and/or spillways are sufficient to pass through said marsh within a reasonable time any excess waters over and above the capacity of said dams.

"2. I find that No. 13 Dam, located in T. & N. O. Section 13, is within a gully extending southward from said point, and that the existence of same dam in its present form causes a diversion of surface-water to some extent; that is to say that a part of the surface-water concentrating at such point is, by reason of the existence of said dam, caused to be diverted and flow in a northeasterly direction and into Crooked-or Ardoin Marsh.

"3. I find that the existence of the dam near the south line of T. & N. O. Section 16, known as No. 16 Dam, and the dam within Section 13, known as No. 13 Dam and their maintenance by the defendant, have the effect, from time to time, of causing water within said artificial lake and within the marsh to reach such a depth as to affect to some extent the maintenance of plaintiff's Ardoin Flume located across said marsh within H. T. & B. Section No. 8, but in this connection I further find that the damage to said Flume from said cause has been slight, that the same is readily measurable in terms of money, and that such damage is in no sense irreparable. In this connection I further find that said flume, although constructed about the year 1925, and continuously used each and every year since that date, nevertheless has functioned continuously throughout all of said time for the purposes for which it was intended, and that such damage as has been caused and occasioned by the acts of defendant have not, at any time in the past prevented, nor can

they reasonably be expected to at any time within the near future prevent, the use of said flume by plaintiff for such purposes.

"4. I find that the plaintiff is the owner of said Ardoin flume and has a right of way easement contract for that part of the canal extending from the south line of H. T. & B. No. 8 Northward through said section to a point near the northeast corner thereof and through H. T. & B. 7 to the northeast corner of said Section 7; that all rice lands watered through said canal by plaintiff through its Ardoin flume are, either, lands owned and/or leased by defendant, or, lands located south of the south lines of T. & N. O. Sections 15 and 16. I further find that plaintiff, since the year 1925, has used said canal in its entirety during the rice growing season each and every year for the purpose of passing water there through for the irrigation of rice crops.

"5. I further find that as a result of the impounding of water by the defendant by the use of the dams aforesaid, some damage to the canal levees of the canal used by plaintiff within said territory has been occasioned, but in this connection I further find that such damage has been slight and has been the result of a combination of causative factors, to-wit, the existence of such impounded water, the action of muskrats in burrowing holes in said levees and the action of cattle in trampling upon such levees. I further find that such damage to said levees as may have been caused by the acts of defendant are readily measurable in money and are in no sense irreparable.

"6. I further find that the allegations of plaintiff's petition, as to the contamination of waters within the canal operated by it by so-called 'surface-water' moss as a result of acts of the defendant, are not sustained by the evidence, but that the source of such contamination, if any, is not shown and cannot, so far as the evidence in this case discloses, be laid at the door of defendant. On the contrary, I find that during the rice watering season of 1942, Mr. Fred Nolte, a responsible official of Nolte Irrigation Company, plaintiff in this suit, asked for and received permission to take water out of the lake of defendant and pass the same through the Nolte Irrigation Company canal for the purpose of watering rice therewith, and that such was in fact done, so that if any of the so-called 'surface-water' moss alleged to have accumulated in plaintiff's canal had its source in the lake of defendant, it was, partially at least, through the deliberate act of a responsible official of plaintiff, Nolte Irrigation Company.

"7. I find that the defendant B. H. Willis is the owner of all lands shown on defendant's Exhibit '4,' except that part of H. T. & B. Railway Company Section 8 lying outside of a certain 80 acre tract marked, 'B. H. Willis 80 Ac.' in the southeast corner of said Section P. F. Edwards Survey, and T. & N. O. Sections 17, 31, 32, 34 and 35. I further find that as to the P. F. Edwards Survey the said defendant has the right of possession under and by virtue of lease contract with the owners, Wirt Davis et al. I further find that said B. H. Willis owns, in addition to the lands shown on said map, but in the same general vicinity, and constituting practically a solid block of contiguous surveys, enough additional land to make approximately nineteen thousand (19,000) acres.

"8. I find that the before mentioned dams and levees were constructed by the defendant at his own cost and expense and that in addition thereto he has constructed within said lands, that is to say within said 19,000 acre block, certain roads, drain ditches and laterals, all of which are used and useful in connection with his use and occupation of said lands for the purpose of rice farming and the pasturing of cattle, and that all of said improvements in the aggregate represent an expenditure on behalf of the defendant of upward of $100,-000.00; that the defendant plants certain parts of said land to rice and that the total acreage per year averages approximately 4,000 acres; and that the defendant owns and now pastures within the confines of said block about 2,200 head of cattle, and that said dams and artificial lake above mentioned are used in part for the furnishing of drinking water to such cattle.

"9. I further find that if the defendant were required to remove and destroy the before mentioned three dams, viz., Peeler, No. 13 and No. 16, and the levees connecting with No. 16, and running northward to a point near the north line of T. & N. O. Section 16, it would have the effect of greatly reducing the value of defendant's investment in said territory, and I further find that, if said defendant were required to remove and destroy said dams and levees other lands, some of which belong to defendant and some belonging to other per-

sons, lying in a general southerly direction from said dams, would be impaired in value and in its usefulness as agricultural lands, due to the fact that with such dams removed said lands would be required to carry a greater volume of surface-water than is now cast upon them.

"10. I find that the rainfall record at the A. & M. College Experiment Station at Amelia, Jefferson County, Texas, which is located approximately twenty miles from the center of the block of land in question, but which, it is agreed, represents the average rainfall within the area in question, for the years 1932 through 1942, is as follows:

| Year | Inches |
| --- | --- |
| 1942 | 67.30 |
| 1941 | 80.69 |
| 1940 | 57.62 |
| 1939 | 35.95 |
| 1938 | 50.51 |
| 1937 | 41.07 |
| 1936 | 48.48 |
| 1935 | 64.87 |
| 1934 | 64.24 |
| 1933 | 54.29 |
| 1932 | 41.10 |
| 29 years average, 1913 through 1942 | 54.08. |

"Conclusions of Law

"I conclude, from the facts hereinabove found, as well from other facts developed in the trial, that the plaintiff has failed in the burden upon it of exhibiting a cause of action for mandatory injunction. I further conclude that the plaintiff has shown a prima facie title to a right of way easement over and across the lands of defendant and of Wirt Davis, et al, beginning at the south line of H. T. & B. Section 8 and following the course of the canal from that point southward through the P. F. Edwards, T. & N. O. No. 15 and T. & N. O. No. 30."

No exception was taken by the appellant to the findings of fact and, in our opinion, these findings are supported by the record. The appellant insists, however, that some of the findings which the trial court designated as findings of fact are not findings of fact but constitute unwarranted conclusions of law.

The question for determination is whether, under the foregoing facts, the trial court was warranted in refusing to grant the mandatory injunction sought by the appellant.

The appellant contends that the appellee has unlawfully diverted the natural flow of the surface waters and has unlawfully impounded the surface waters by constructing dams · and embankments across gullies and depressions, and that in times of heavy rainfall such waters so diverted and impounded have injured, and will continue to injure, appellant's irrigation canal and the levees protecting the same, and its Ardoin flume; that such dams and embankments constructed by the appellee are permanent in their nature and that the injuries and damages are continuing; that the acts of the appellee constitute a violation of the terms of Article 7589a, Vernon's Ann. Civ.St.; that the very fact conditions demonstrate that the remedy of damages is inadequate and uncertain, is not practical and efficient to the ends of justice; that, therefore, under the statutes of the State of Texas, the pleadings, and the facts, the trial court was not justified in refusing appellant's plea for a permanent mandatory injunction to abate the injurious and destructive conditions caused by the appellee's unlawful acts. This is the substance of the three points of error presented to this court for review.

The provisions of Article 7589a applicable to this case were enacted in 1915, but were omitted from the 1925 codification. In 1927, the Legislature enacted Senate Bill No. 16, being Chapter 56, Acts of the Fortieth Legislature, which contains the provisions of the law so far as they apply in this case. In 1935, this law was amended, as shown by Chapter 334, Acts of the Forty-fourth Legislature, Regular Session. The provisions of the statute as amended are now set out and shown as Article 7589a, Vernon's Ann.Civ.St. This article provides, in substance, that it shall be unlawful to divert the natural flow of the surface waters in this State or to impound such waters in such a manner as to damage the property of another by the overflow of such waters so diverted or impounded and that "in all such cases the injured party shall have remedies, both at law and in equity, including damages occasioned thereby." The validity of this law has been sustained by the Supreme Court of Texas. Miller v. Letzerich, 121 Tex. 248, 49 S.W.2d 404, 85 A.L.R. 451.

It will be noted that the appellant did not seek legal relief in the form of damages, but sought only equitable relief in the form of an application for permanent manda-

tory injunction. As shown by the findings of fact set out above, the trial court determined that no serious damage was resulting to the appellant, nor was any serious damage threatening, and that such damages as appellant was suffering by reason of the impounding of the waters were not only slight but were readily measurable in terms of money and were in no sense irreparable. It will be further noted that the trial court found that the Ardoin flume has been in service since 1925, and that it has functioned continuously throughout said time for the purpose for which it was intended; furthermore, that it is not reasonable to expect that the functions of the flume will be impaired in the near future.

The question for determination then resolves itself into whether or not the violation of the terms of the statute by the appellee, causing even a slight injury to the appellant, entitles the appellant to the benefits of a mandatory injunction commanding the abatement of the entire conditions causing such injuries. The terms of the statute do not expressly provide for the remedy of mandatory injunction as a matter of right, but the injured party is expressly accorded "remedies * * * in equity," as well as damages. We construe this to mean, however, that a remedy in equity shall be granted only upon equitable principles. The authorities are uniform in holding that the extraordinary remedy of permanent mandatory injunction compelling the alteration, destruction, or removal of property should be granted with great caution and should not be granted unless serious injury is being inflicted or, in all probability, will be inflicted.

"* * *, mandatory injunction will never be granted unless extreme or very serious damage at least will ensue from withholding that relief; and each case must of course depend upon its own circumstances." 32 C.J. 23.

"Although the existence of this power in a court of equity is generally recognized, it is not regarded with any considerable degree of favor. Courts are reluctant to exercise it, and they act with caution and only in cases of necessity." 14 R.C.L. 317, Sec. 15. See, also, Simon v. Nance, Tex.Civ.App., 142 S.W. 661; Johnson v. Lancaster, Tex.Civ.App., 266 S.W. 565.

The appellant contends that, inasmuch as the appellee admitted that he had no permit from the Board of Water Engineers to impound the surface waters and inasmuch as the court found that he was diverting surface waters and inflicting some degree of injury upon appellant, that the appellant was ipso facto entitled to a writ of mandatory injunction under the terms of Article 7589a. We are not in accord with this contention. We are of the opinion that the "remedies * * * in equity" granted by the statute should be granted only under the general rules above stated.

The appellee contends that, as shown by the findings of fact, the destruction or alteration of the dams in question would cause much greater damage to the appellee than their maintenance is causing to the appellant and, therefore, under the equitable rule of "balancing of equities," the appellant would not be entitled to this equitable relief. We do not agree with appellee in this contention. The appellee stands in the position of violating the provisions of Article 7589a. In other words, he is violating a statutory right of appellant under the terms of this article and, therefore, the rule for balancing of equities would not apply. Bass v. Taylor, Tex.Civ.App., 50 S.W.2d 853; 28 Am.Jur. 253, Sec. 56. We are of the opinion, however, that, inasmuch as the statute upon which the appellant relies does not specifically direct the granting of an injunction in the event surface waters are diverted or impounded in such a manner as to damage the property of another, the appellant is subject to the general rules of equity as above set out and must show serious injury or threatened injury before he would be entitled to the extraordinary remedy which he seeks. The statute merely guarantees to the appellant the right to recover damages if he can show damage, and the right to equitable relief if he establishes facts which will bring him within the purview of the equitable rules authorizing equitable relief. In the instant case the appellant has failed to convince the trial court that his damage was serious or will be serious and has failed to show conditions of such a nature as to make it an abuse of discretion on the part of the trial court in refusing to issue the mandatory injunction.

**456**

We therefore determine the controlling question in this case, that the trial court was, under the facts as presented to him and as found by him, warranted in refusing to grant the mandatory injunction prayed for by the appellant. Powers v. Temple Trust Co., 124 Tex. 440, 78 S.W. 2d 951; Hill v. Brown, Tex.Com.App., 237 S.W. 252; Smiley v. City of Graham, Tex. Civ.App., 37 S.W.2d 289.

The judgment is affirmed.