Judgment reversed and judgment rendered with instructions.

B. R. Reeves, of Palestine, for appellant.

Williford & Williford, of Fairfield, and Bowlen Bond, of Teague, for appellees.

TIREY, Justice.

This is an appeal from an order (nonjury) denying plaintiff's application for writ of injunction. There is no statement of facts. The facts are without dispute and we will state those pertinent to this discussion.

The plaintiff, Red Lake Fishing & Hunting Club, a corporation, owned a 400 acre tract of land in Freestone county, on which an earthen dam had been constructed across a natural water course which impounded

**RED LAKE FISHING & HUNTING CLUB v. BURLESON et al.**

No. 2830.

Court of Civil Appeals of Texas. Waco.

Jan. 27, 1949.

Rehearing Denied April 7, 1949.

116

water that covered approximately 150 acres of land. About fifty stockholders built and now maintain substantial camp lodges on the 400 acre tract of land near the lake. The defendants own a tract of land immediately south of and adjacent to said 400 acre tract. In January, 1947, defendants built an earthen dam three-fourths of a mile south of Red Lake dam across the same water course. Defendants' dam has a spillway at each end, allowing excess water to escape back into the water course. This dam impounded the excess waters of Red Lake and all the other surface waters immediately south of the Red Lake dam and this water backed up in a northerly direction and crossed the north line of defendants' tract and spread on to a portion of the property belonging to the plaintiff. The Red Lake Hunting & Fishing Club filed this suit for damages and injunctive relief in June, 1947, and sought a temporary injunction against defendants for the alleged injury and alleged threatened injury caused by the waters being backed up on plaintiff's land. The court denied any relief at the temporary hearing and at the hearing of the trial on the merits.

At the request of the plaintiff the court filed findings of fact and conclusions of law, the pertinent parts of which we quote:

"13. That at the time of the trial (on the merits) of this case, the waters impounded by the construction of the Burleson Dam extended north of the north line of the defendant's tract of land and onto approximately three-fourths of an acre of plaintiff's land.

"14. At the boundary line between plaintiff's tract of land and defendant's tract of land, where such line crosses Jolly Cole Slough, the water was and is 184 feet in width. The depth of the water in Jolly Cole Slough Channel, at such boundary line, is 4½ feet; and the channel of such Slough at such point is one foot in depth, the water on the banks of such Slough, at such boundary line, being 3½ feet deep; and such water narrowing in depth to the water's edge of that portion of the water covering plaintiff's land.

"15. That the water impounded by the construction of Burleson Lake Dam at the time of the trial of this cause, lacked about 15 feet of reaching the base of Red Lake Dam; and that if the water of Burleson Lake was caused to rise 1¼ feet higher than the present level of such water in such lake, then the water of such Burleson Lake would reach the base of Red Lake Dam.

"16. That with the waters of Burleson Lake being on a level with the lowest spillway of said Burleson Dam, there is no way for the waters in Burleson Lake to recede off the land of plaintiff, except as such waters of Burleson Lake is lowered by evaporation, and except as the waters of such Lake are lowered by the water escaping through the 8 inch pipe extending from such Lake through such Burleson Dam at its base.

"17. That the area of some ¾ acre of plaintiff's land covered by reason of the waters being caused to back up from the Burleson Dam, is the usual land found along spring branches and marshy creeks— that is, the same as liberally sprinkled with small trees, saplings, vines, underbrush, etc.

"18. That there was no evidence introduced upon the trial of this cause as to the amount of plaintiff's injury or damages suffered by reason of the complained of acts of the defendant, except that it was shown as to the extent of the land of plaintiff (¾ of an acre) covered by the waters backing up from the Burleson Dam, as above found and stated.

"19. That the evidence in this case is wholly insufficient to show any injury to the Red Lake Dam, or any threatened injury to such dam by reason of the acts of the defendant above found.

"20. That whatever injury the plaintiff has suffered by reason of the waters being caused to back up and cover ¾th of an acre of plaintiff's said tract of land, can be measured in money, and is not irreparable.

"21. That although plaintiff's allegation in its petition are those seeking prohibitory injunctive relief, yet such petition, as well as the evidence, showing that at the time of the filing of plaintiff's suit the Burleson Dam had then been completed, there is no injunctive relief that the court could grant the plaintiff, except in the nature of a mandatory injunction.

"22. The defendant did not know when the Burleson Dam was built or constructed that its height would cause water to back up in Jolly Cole Slough beyond their north line and on to any part of plaintiff's land; the defendant, S. A. Burleson, having consulted two surveyors with reference to the height of such dam, prior to its construction, and it appears from the evidence that he received different reports from such surveyors as to the proper height of such dam. After the dam was finished and rains came, Burleson then discovered that he had the spillway to his lake and dam higher than he intended. He then lowered the spillway about two feet, and subsequent to the hearing on plaintiff's application for temporary injunction, he again cut or lowered such spillway of the Burleson Dam to its present level. The evidence does not disclose the surveyor or surveyors advising Mr. Burleson with reference to the proper height of his dam, or proper height or level to construct the spillway of such dam and lake; but an accurate survey, of course, would have disclosed that water in such lake, when at its present level, with the bottom of spillway of the Burleson Dam, would be backed up in such lake far enough to cover the small portion of plaintiff's land above found."

The court concluded as a matter of law:

"1. The extraordinary remedy of permanent mandatory injunction compelling the alteration or lowering of defendant's dam, or a part thereof, should not be granted in this case, it not being shown that serious injury is being inflicted, or in all probability will be inflicted by the complained of acts of defendants.

"2. It not being shown that plaintiff will suffer irreparable damage and injury by reason of the withholding of injunctive relief in this case, the petition for injunctive relief was denied.

"3. The right to injunctive relief in this water controversy is limited by the general rule applicable to the writ and no threatened injury of an irreparable character being shown by the evidence submitted, the injunctive relief sought by plaintiff was denied.

"4. It being shown that water was by the defendants caused to back upon ¾ of an acre of plaintiff's land by reason of construction and building of the Burleson Dam, and the plaintiff having failed to offer evidence as to the amount of damages, the court assessed nominal damages of ten dollars against the defendants and costs of suit."

The decree awarded to plaintiff nominal damages in the sum of $10, together with costs of suit, and denied all other relief. The decree further provided that it was entered without prejudice to the rights of the plaintiff should conditions so change as to show irreparable loss to plaintiff.

Appellant assails the judgment denying the injunction substantially on the ground that inasmuch as it is undisputed and the court found that appellees, in the construction and maintenance of their dam, had permanently flooded three-fourths of an acre of land belonging to appellant, and that the water covered said tract to a depth of three and one-half feet, that such flooding amounted to an appropriation and a trespass and that such appropriation and trespass, as a matter of law, constituted irreparable damage; and since it was a continuing trespass, the injury was permanent and the writ of injunction should have been granted. We think this proposition must be sustained.

Our Supreme Court, in Humphreys-Mexia Co. v. Arseneaux, 116 Tex. 603, 297 S.W. 225, point at page 230, 53 A.L.R. 1147, said: "It is an elementary rule of law that, while a riparian, or another with proper authority, may construct dams in streams for the purpose of making reservoirs, still, in doing so, they are not permitted to flood the lands of other riparians, or to back the water past the line of other owners of the streamway. (Citing many authorities.) * * * In Farnham on Waters § 547, supra, the author correctly states the rule: 'Although, as will be seen in a subsequent section, there are few cases which apply to the damming back of water, *the rule that to entitle one riparian owner to complain of acts of another he must show that he has been injured,* those decisions are not only *against the weight of authority,* but also *are unsupported by principle. Any swelling of the stream over the line is an invasion of the rights of the upper owner, who*

*has a right to the stream in its natural condition, which he may protect, not only for present needs, but for possible future ones. It constitutes a direct trespass upon his property which he may seek the aid of the courts to redress, and he is not bound to show that he is specially injured to maintain the action. \* \* \* Throwing the water back on the upper land is a nuisance in and of itself, of which the upper owner may complain whenever he desires to do so, whether it is a direct injury to him or not. He has a right to have his land free from the water and can object to its presence whenever he chooses; and the lower owner has no right in the premises. \* \* \* The wrong comes in backing the water over the line, and the reasonableness or unreasonableness of the act of the lower owner is wholly immaterial.' "*

The foregoing opinion of the Supreme Court was handed down in 1927 and so far as we have been able to find the doctrine announced in that case has not been overturned. Moreover, the appellees under this record stand in position of violating the provisions of Art. 7589a, Vernon's Ann. Civ.Stats. This article in effect provides that it shall be unlawful to divert the natural flow of surface waters in this state or to impound such waters in such manner as to damage the property of another by overflow of such waters so diverted or impounded, and that in all such cases the injured parties shall have remedies, both in law and in equity, including damages occasioned thereby. The validity of this law was sustained in Miller v. Letzerich, 121 Tex. 248, 49 S.W.2d 404, 85 A.L.R. 451. In Bass v. Taylor, 50 S.W.2d 853, 856, the Dallas Court of Civil Appeals, in construing this article, held: "Appellants present the theory that the right of appellees to prevent injury to their land, by the construction of the dam, should be measured by the balancing of equities between the parties, and offered to prove that damage in a lesser amount would be sustained by appellees than would be sustained by appellants and adjoining land owners, similarly affected, if the construction of the dam should be prohibited. The rule for balancing of equities does not apply in the instant case, for appellees have the statu-

tory right to have the overflow water of Wilson creek to pass through natural channels." It is true that our Supreme Court reversed the judgment of the Court of Civil Appeals and that of the district court and remanded this cause, but as we understand the opinion by the Supreme Court, 126 Tex. 522, 90 S.W.2d 811, it did not disturb the interpretation of this statute by the Dallas court. The same interpretation was given to this statute by the Amarillo Court of Civil Appeals in Nolte Irrigation Co. v. Willis, 180 S.W.2d 451, point at page 455, writ ref. w. m., citing also 28 American Jur. 253, sec. 56. This court so construed the above article in Falls County v. Kluck, Tex.Civ.App., 199 S.W.2d 704, point at page 705. If we are correct in our construction of the above statute, then the trial court's conclusion of law, wherein he held in effect that plaintiffs' right to injunctive relief in this case is limited by the general rule applicable to writs of injunction, is erroneous; and if we are correct in this view, then the trial court did not have the right to balance the equities of the parties in this case. See points 2, 3 and 4, in Falls County v. Kluck, supra, and authorities there cited. In this connection we think it pertinent to observe that we find nothing in appellees' pleading on which they went to trial tendering the issue that the further lowering of the spillway would cause great hardship and loss to appellees, or that the granting of the writ directing appellees to so lower their spillway would in reasonable probability result in greater hardship or loss to them than would result to appellant by refusal thereof. Believing that the factual situation in the case at bar brings it within the provisions of Art. 7589a aforesaid, our view is that the rule announced by our Supreme Court in Bednarz v. State, 142 Tex. 138, 176 S.W.2d 562 does not apply.

We think it is interesting to note that appellees consulted two surveyors with reference to the height of the dam in question prior to its construction and that each of these surveyors gave his report as to the proper height of the dam. After the dam was finished and the rains came, appellees then discovered that they had the spillways to their lake and dam higher than

they intended. They then lowered one of the spillways about two feet and subsequent to the hearing on plaintiff's application for temporary injunction they again cut or lowered such spillway to its present level. In the court's findings of fact we find: "The evidence does not disclose the surveyor or surveyors advising Mr. Burleson with reference to the proper height of his dam, or proper height or level to construct the spillway of such dam, and lake, but an accurate survey, of course, would have disclosed that water in such lake, when at its present level with the bottom of the spillway of the Burleson dam, would be backed up in such lake far enough to cover the small portion of plaintiff's land as so found." Under the record here made, appellees' acts in constructing their dam violated the express provisions of Art. 7589a aforesaid. Having done so, it was not necessary for appellant to plead or prove that the damages resulting from the trespass of which it complained were beyond the possibility of repair by monetary compensation in order to authorize the court to grant it equitable relief. See Falls County v. Kluck, supra, points 2 and 3, and authorities there cited.

It is true that appellant has not sustained any damage except that it has been deprived of ¾ of an acre of land, but under our system of jurisprudence (absent the provisions of Art. 7589a, supra) the appellees could not take the appellant's land in any other tortious manner, except under the doctrine of the balancing of equities. The net effect of appellees' conduct is to make ¾ of an acre of appellant's land a part of their lake and they have no legal right to do so. Since the trespass is a continuing one and under the evidence adduced it can be avoided only by the lowering of appellees' spillway, and since such conduct violates the provisions of Art. 7589a, supra, we think that appellant has the legal right to injunctive relief and that appellees should be required to lower their spillway so that their dam will not back water past their property line and on to and over the property of appellant. Moreover, we find in appellees' first amended original answer on which they went to trial this averment: "Further answering, defendants now offer

to do any and all equities that may be required herein under the doctrine of this court should said court deem same necessary and proper on the part of said defendants." Since defendants have expressed a willingness to do equity, we see no reason why they should not be required to perform their legal duty and lower their spillway, so as to take the overflow water off of appellant's tract.

Accordingly, the judgment of the trial court denying the injunction prayed for will be reversed and judgment is here rendered that the trial court issue its mandatory injunction commanding appellees to lower their spillway so that the dam will not back water past their own property line and onto the property of appellant.

The judgment of the trial court is reversed and judgment is here rendered with instructions.