Albert CABLA, Appellant,

v.

W. J. SHOCKLEY, Appellee.

No. 7602.

Court of Civil Appeals of Texas.

Amarillo.

April 4, 1966.

Rehearing Denied May 9, 1966.

R. H. Munsterman, Levelland, for appellant.

Willard G. Street, Jr., Littlefield, for appellee.

DENTON, Chief Justice.

Appellant, Albert Cabla, sought a mandatory injunction which would require W. J. Shockley, appellee, to completely remove an earthen dike or dam built and maintained by appellee along the common boundary line of the parties' property. Appellant alleged the dike interfered with the natural

flow of surface water from Cabla's land and that as a result of such interference his land suffered continuing damage. Two special issues were submitted to the jury and the jury found the dike did not obstruct the natural flow of the surface water from appellant's land so as to impound such water. The damage issue, conditionally submitted, was not answered. Based upon a verdict of the jury the trial court denied the injunctive relief.

Cabla was the owner of a quarter section in Lamb County and Shockley owned a quarter section adjoining the Cabla land to the west. They had a common boundary line running north and south. Land in both tracts was fairly flat but Cabla's land sloped gradually to the west and south. A licensed surveyor surveyed the premises and testified Cabla's land sloped approximately .1 of a foot per 100 feet. The northern half of the Cabla land slopes slightly more than the southern part of the tract. The dike lies along the parties' boundary line but is actually located on Shockley's land. Although it lies near the boundary line, the record does not reveal the exact location. Testimony of the dike's height varied from twelve inches to twenty inches. A lake is situated in the northwestern corner of Shockley's land. It is this lake that ultimately receives a portion of the water flowing over the land in question. There is a high point in the approximate center of the north-south boundary line. Water flowing over the northern half of Cabla's property tends to flow north and into the lake in Shockley's tract; while water running to the south of the high point tends to flow south into a barrow ditch of a county road. Cabla did not seek relief in the form of monetary damages, but only asks for equitable relief in the form of a mandatory injunction for the removal of the dike.

The jury found the dike did not obstruct "the natural flow of the surface water from the Cabla land in such manner as to impound such water". Along with the issue

the trial court gave the following definition:

"To impound surface water is to hold or collect the same, by means of human alterations of the natural flow of such water."

The court's charge was submitted without objection. The appellant attacks the sufficiency of the evidence to support the jury verdict with the contention there is no evidence and insufficient evidence to support the finding.

The dike was constructed in December, 1963. The area received unusually heavy rains in June, 1964 and June, 1965. There was testimony to the effect the dike backed up water on the Cabla land on these two occasions for several feet; and that water stood on his land for several days. There is no evidence water stood on the Cabla land on any other occasion. The dike was referred to as an "open-end" embankment which was described as open at each end which permitted water to flow around either end of the dike. On the two occasions when large rains came there is evidence water did flow around the dike. The testimony was that the water flowing from the northern portion of the Cabla land flowed into Shockley's lake as it did prior to the time the dike was constructed. The water flowing from the southern part of his land flowed into the barrow ditch along the country road.

The licensed surveyor testified the dike would change the direction of the flow of the water, but it would not change where the water "would wind up"—that is, in the lake or barrow ditch. There was testimony of an obstruction along Cabla's northern boundary line. Some witnesses described it as a ditch while others referred to it as a small dike. The evidence is by no means clear as to what effect this obstruction, whatever it might be, would have on water flowing on to the Cabla property. The only evidence that Shockley's dike held or collected water on Cabla's property was his

own testimony and that of his employee that water stood for some three days after the first large rain. The latter testified the second large rain, which came some two weeks prior to the trial date, did not cause the water to back up. The main objection to the dike seemed to be the tenant farmer could not cultivate that strip of land for several days after a rain because it was too wet to move the farm machinery upon it. A neighboring farmer could see no difference in the crops on Cabla's land near the dike and the crops on the other portions of the same tract. Shockley testified he built the dike along his eastern boundary to prevent water from flowing from Cabla's land across his land; but permit the water to drain at each end of the dike. There is evidence this was accomplished.

█ The narrow questions presented here are whether or not there is any evidence or sufficient evidence to support the jury finding that the dike did not "obstruct" the water flow so as to "impound" such water. It is uncontradicted water flowed from either end of the dike. Some went north into the lake and some flowed south into the county road ditch. There is no evidence this water caused any substantial damage to Cabla's land. The fact some of the water was detained at the dike is not sufficient to set aside the jury verdict. This is especially true in the light of the testimony that the damage done by the standing water was slight. We conclude there is sufficient evidence to support the jury verdict.

█ Appellant takes the position that since Shockley admitted, and other testimony corroborated the fact, that the dike changed the direction of the flow of the water after it reached the dike; and that since some of the water was backed up on Cabla's land after heavy rains, he is entitled to a mandatory injunction as a matter of law under the provisions of Article 7589a, Vernon's Annotated Civil Statutes. We do not agree with this contention. Even though it may be said Shockley violated

Article 7589a by diverting the natural flow of surface water, the granting of injunctive relief must be had only upon equitable principles. Nolte Irrigation Co. v. Willis (Tex. Civ.App.) 180 S.W.2d 451 (Ref. W.M.) was also a case in which a mandatory injunction was sought to require the removal of dams and embankments affecting the natural flow of surface water. The court there stated the applicable rule in the following language:

"The question for determination then resolves itself into whether or not the violation of the terms of the statute by the appellee, causing even a slight injury to the appellant, entitles the appellant to the benefits of a mandatory injunction commanding the abatement of the entire conditions causing such injuries. The terms of the statute do not expressly provide for the remedy of mandatory injunction as a matter of right, but the injured party is expressly accorded 'remedies * * * in equity,' as well as damages. We construe this to mean, however, that a remedy in equity shall be granted only upon equitable principles. The authorities are uniform in holding that the extraordinary remedy of permanent mandatory injunction compelling the alteration, destruction, or removal of property should be granted with great caution and should not be granted unless serious injury is being inflicted or, in all probability, will be inflicted."

\*　　\*　　\*　　\*　　\*　　\*

" * * * We are of the opinion, however, that, inasmuch as the statute upon which the appellant relies does not specifically direct the granting of an injunction in the event surface waters are diverted or impounded in such a manner as to damage the property of another, the appellant is subject to the general rules of equity as above set out and must show serious injury or threatened injury before he would be entitled to the extraordinary remedy which he seeks. The statute merely guarantees to the appellant the right to recover damages if he can

show damage, and the right to equitable relief if he establishes facts which will bring him within the purview of the equitable rules authorizing equitable relief."

See also Piwonka v. Hall (Tex.Civ.App.) 376 S.W.2d 912 (Ref. N.R.E.). Dallas Independent School District v. Daniel (Tex. Civ.App.) 323 S.W.2d 639 (Ref. N.R.E.). First State Bank and Trust Co. of Rio Grande City v. Starr County (Tex.Civ. App.) 306 S.W.2d 246. In our opinion the facts of this case fail to show damages of such a nature to justify the granting of a mandatory injunction.

There being no reversible error, the judgment of the trial court is affirmed.