**Ivan LANGFORD et al., Appellants,**

v.

**Karl E. KRAFT, Appellee.**

**DOWNING & WOOTEN ENTERPRISES, INC., et al., Appellants,**

v.

**Karl E. KRAFT, Appellee.**

**Nos. 7483, 7484.**

Court of Civil Appeals of Texas, Beaumont.

July 26, 1973.

Rehearing Denied Aug. 16, 1973.

**45**

entered after a hearing in which all of the parties participated, with the testimony being contained in one statement of facts. In this single opinion we will dispose of the separate appeals; and, in so doing, we will refer to Kraft as plaintiff, Langford by his surname, and to the defendant, Downing & Wooten Enterprises, Inc., as "Developers".

### 1. Preliminary Statement

At all times material to this suit Kraft was the owner of a 21-acre tract of land located in Montgomery County upon which he resided. The Developers purchased a tract of land containing approximately 52 acres, part of which was adjacent to that owned by plaintiff. Developers retained Langford, an engineer, to prepare plans and specifications for the drainage and street improvements upon their land which they subdivided into a development known as "Vicksburg". The plat of this subdivision was presented to and approved by the City Planning Commission of the City of Houston (within whose extraterritorial jurisdiction the land was situated), and by the Commissioners Court of Montgomery County.

The plat of the subdivision dedicated the streets therein to the public use and elaborate plans and specifications were prepared by Langford for the paving thereof and the construction of storm sewers for carrying off the surface water from the subdivision. Before the improvements were constructed, the Developers' lands were in a raw state with trees, brush, etc., and the soil was of a sandy and porous nature. After completion of the improvements, some six acres of the subdivision were made up of paved streets designed to drain into an elaborate system of storm sewers. This change in the surface of the land, as well as the construction of houses upon the lots in the subdivision, materially altered the ability of the land to absorb the natural rainfall thereon.

According to plaintiff's allegations and his own testimony, before the commence-

Sears and Burns, C. Charles Dippel of counsel, Houston, for Ivan Langford and others.

Fred A. Collins, Houston, for Downing & Wooten Enterprises, Inc.

Karl E. Kraft, pro se.

KEITH, Justice.

We review two interlocutory appeals by different defendants complaining respectively of an order overruling the plea of privilege of Langford to be sued in Harris County, and the granting of a temporary mandatory injunction against the other defendant, Downing & Wooten Enterprises, Inc. There is a common transcript, and the two appeals are from a single order

ment of the changes approximately twenty to twenty-five acres of Developers' land drained naturally away from plaintiff's land, with the remainder draining into a natural drainway onto and across his lands. Under Langford's plans, according to plaintiff's evidence which is supported at least in part by the engineering evidence, all of the fifty-two acres of the subdivision was drained onto and across plaintiff's lands, causing flooding, permanent damage including erosion, etc., thereon.

Plaintiff sought compensatory and punitive damages against Developers and Langford for the alteration of the natural drainage, the damage done to his land in the past, etc. He also sought a mandatory injunction to prohibit further dumping of the excess water upon his lands pending a hearing on the merits of the controversy.

Langford filed his plea of privilege to be sued in Harris County and it was controverted by plaintiff who relied upon Subdivisions 9 and 14 of Art. 1995, Vernons Ann.Civ.St. The single hearing resulted in one order which overruled Langford's plea of privilege and granted the mandatory injunction restraining the Developers alone "from discharging, or permitting to be discharged, from the storm sewer system situated on the Vicksburg Subdivision land surface water and other water from the said subdivision land onto plaintiff's land" by requiring certain specific acts including the closure of the discharge opening in the storm sewer system adjacent to Kraft's land.

Plaintiff having posted the required injunction bond, the court permitted Developers to supersede the judgment, and both appeals are now before us.

### 2. Developers' Appeal from the Mandatory Injunction

Plaintiff relied upon the provisions of § 5.086, V.T.C.A., Texas Water Code, the pertinent provisions thereof reading:

"(a) No person may divert or impound the natural flow of surface waters in this state, or permit a diversion or impounding by him to continue, in a manner that damages the property of another by the overflow of the water diverted or impounded.

"(b) A person whose property is injured by an overflow of water caused by an unlawful diversion or impounding has remedies at law and in equity and may recover damages occasioned by the overflow."

The predecessor statute to § 5.086 was Art. 7589a, V.A.C.S., the validity of which was upheld in Miller v. Letzerich, 121 Tex. 248, 49 S.W.2d 404, 85 A.L.R. 451 (1932).

■ Not all of Developers' lands were higher than that of plaintiff; and, as to the land of plaintiff which was lower than that of Developers, it "must receive the surface waters naturally flowing thereon from a higher estate, yet it is not required to receive these waters except in their natural condition, untouched by the hands of man." Bunch v. Thomas, 121 Tex. 225, 49 S.W.2d 421, 423 (1932). Plaintiff's "[l]and is subject to no servitude to receive upon it water, the natural flow of which has been diverted to it." Higgins v. Spear, 118 Tex. 310, 15 S.W.2d 1010, 1011 (1929). The proprietor of higher land "is entitled to have surface water flow to the lower land, so long as the water follows its usual course and runs in its natural quantities." Samples v. Buckman, 246 S.W.2d 283, 285 (Tex.Civ.App., Amarillo, 1952, error ref.).

■ Under plaintiff's evidence, which was accepted by the trial court, the Developers had so constructed their storm sewer system as to cause the entire surface rainfall to be concentrated into one system of pipes from which it was discharged in a concentrated mass with great force upon his lands. Our review of the record convinces us that the Developers had increased both the quantity and the velocity of the runoff water and caused "it to pass off onto the lands of the defendants in er-

ror [plaintiff] in increased quantities, in a different state and in a manner well calculated to inflict injury." Miller v. Letzerich, supra (49 S.W.2d at 414).

In so doing, the Developers violated the statute and their acts were, in the language of Chief Justice Cureton in *Miller,* supra, "prohibited, not only by the civil law and the statute under examination, but are condemned with equal emphasis by the so-called 'common law rule' or 'common enemy doctrine.'" Id.

Developers rely heavily upon the rule of law that a temporary mandatory injunction "should never be granted except with great caution and only in cases of extreme hardship when the necessity for the relief is manifest." Lowe, 6 Texas Practice, Remedies § 155, p. 192 (2d Ed. 1973). Primary reliance is had upon the decisions of Nolte Irr. Co. v. Willis, 180 S.W.2d 451 (Tex. Civ.App., Amarillo, 1944, error ref. w. o. m.), and Cabla v. Shockley, 402 S.W.2d 289 (Tex.Civ.App., Amarillo, 1966, error ref. n. r. e.).

We do not find these cases dispositive. In *Nolte,* only a mandatory injunction was sought by plaintiff and it was denied although the court found that the presence of the offending dam " 'causes a diversion of the surface-water to some extent.' " (180 S.W.2d at 452) The Amarillo court simply held that the statute did not *require* the trial court to grant the mandatory injunction sought and said:

"The statute merely guarantees to the appellant the right to recover damages if he can show damage, and the right to equitable relief if he establishes facts which will bring him within the purview of the equitable rules authorizing equitable relief. In the instant case the appellant has failed to convince the trial court that his damage was serious or will be serious and has failed to show conditions of such a nature as to make it an abuse of discretion on the part of the trial court in refusing to issue the mandatory injunction. (Id. 180 S.W.2d at p. 455)

In *Cabla* the jury found that the dike in question did not obstruct the natural flow of the surface water and did not answer the damage issue which was conditionally submitted. After quoting copiously from *Nolte,* supra, Chief Justice Denton concluded: "In our opinion the facts of this case fail to show damages of such a nature to justify the granting of a mandatory injunction." (402 S.W.2d at 292)

In contrast to the fact structure of *Nolte* and *Cabla,* the trial court's findings, as embodied in the judgment, are clear and precise:

"[T]he Court being of the opinion, that Plaintiff is entitled to the temporary injunctions as herein granted . . . for the reason that the diversion of, and the unnatural discharge of, surface water, and of water mechanically delivered to Vicksburg subdivision, onto Plaintiff's land from the storm sewer system situated on the said subdivision land will probably result in irreparable injury to Plaintiff and to Plaintiff's land; that such discharge of water has caused and, if permitted to continue, will probably further cause, substantial erosion of and destruction to Plaintiff's land in, along and in the vicinity of the natural drainway thereon; that such discharge of water has inundated and, if permitted to continue, will probably further inundate substantial areas of Plaintiff's land; that such discharge of water has produced and, if permitted to continue, will probably maintain a flowing drainway, ditch or gully of ever increasing dimensions so as to isolate, and deprive Plaintiff the use of, a substantial area of his land; and that such discharge of water has deposited and, if permitted to continue, will probably further deposit refuse, trash, garbage and debris from Vicksburg subdivision upon Plaintiff's land. For each and all of such reasons it appears, and the Court finds, that Plaintiff has made a proper showing of a probable right and a probable injury and is entitled to the injunctions herein granted."

By citing Storey v. Central Hide & Rendering Co., 148 Tex. 509, 226 S.W.2d 615 (1950), Developers seek to invoke the "balancing of equities" doctrine. The doctrine so invoked is inapplicable once a violation of § 5.086 of the Water Code has been shown. Red Lake Fishing & Hunting Club v. Burleson, 219 S.W.2d 115, 118 (Tex.Civ.App., Waco, 1949, error ref.). There being a continuing statutory violation, as found by the trial court, the balancing of equity doctrine has no application. City of Corpus Christi v. Lone Star Fish & Oyster Co., 335 S.W.2d 621, 623 (Tex.Civ.App., San Antonio, 1960, no writ), and cases therein cited.

We have quoted the trial court's findings of fact and conclusions of law as embodied in the judgment and, from our review of the record, are of the opinion that such findings have substantial support in the evidence. Therefore, these findings are controlling upon this court even though there be conflicting evidence. Calvert v. Union Producing Company, 154 Tex. 479, 280 S.W.2d 241, 243 (1955); Commercial Union Assurance Company v. Foster, 379 S.W.2d 320, 322 (Tex.1964).

When we come to consider the propriety of the order granting the temporary injunction, we are mindful of the rules laid down by the Supreme Court in Transport Co. of Texas v. Robertson Transports, 152 Tex. 551, 261 S.W.2d 549, 552 (1953), which we summarize, omitting citations: (a) The only question before the court on the hearing is the right of the applicant to a preservation of the status quo of the subject matter of the suit pending a final trial of the case on the merits; and (b) the applicant need only show a probable right and a probable injury and is not required to establish that he will finally prevail in the litigation.

In the last cited case, the Court continued by saying:

"The 'status quo' to be preserved by temporary injunction is 'the last, actual, peaceable, noncontested status which preceded the pending controversy.'" (261 S.W.2d at 553–554).

Under this definition and our record, the status quo to be preserved was that which existed before Developers had constructed the drainage system which caused flooding of Kraft's lands.

In reviewing an order granting a temporary injunction, "the only ultimate question" is whether the trial court abused its discretion. And, there was no abuse of discretion in the issuance of the writ if Kraft "pleaded and offered evidence tending to prove a cause of action, that is, a probable right to a permanent injunction and a probable injury." Oil Field Haulers Ass'n v. Railroad Commission, 381 S.W.2d 183, 191–192 (Tex.1964).

Kraft, by pleading and proof, satisfied the requirements of this rule of law and we are required to affirm the judgment granting the temporary injunction unless Developers' contention as to want of necessary parties is sustained, and we now address ourselves to that question presented by their first point.

Developers insist that the trial court erred in overruling their plea in abatement asserting that Montgomery County was an indispensable and necessary party defendant to the proceeding. This contention is predicated upon the fact that the plat of Vicksburg, which included the dedication to the public of the streets and alleys therein, had been accepted by the Commissioners Court long before the institution of this suit. Developers contend that the drainage system of which Kraft complained was "an integral part of the streets and roadways in the subdivision here involved; any alteration, destruction or change in the existing drainage system would necessarily involve material and sub-

stantial alterations and destruction of the streets now owned by the public."[1]

■ We are of the opinion that Montgomery County is not an indispensable party as defined in the leading case of Petroleum Anchor Equipment, Inc. v. Tyra, 406 S.W.2d 891, 893 (1966); nor was it a necessary party under the rationale of Royale Petroleum Corporation v. Dennis, 160 Tex. 392, 332 S.W.2d 313, 314 (1960).

■ Other than the approval of the plat and the requirement of a bond to assure the completion of the improvements in accordance with the requirements laid down by the Commissioners Court, Montgomery County is not shown to have taken any action toward accepting the streets in Vicksburg as a part of the county road system. Art. 6626a, V.A.C.S., requiring the filing and approval of the plat by the Commissioners Court, has been construed as requiring a plat which shall contain "sufficient data to enable the taxing authorities to correctly carry the land on the tax rolls and avoid duplicate or double renditions of the same land." Trawalter v. Schaefer, 142 Tex. 521, 179 S.W.2d 765, 767 (1944). The filing and approval of the plat which undertakes to dedicate streets and roads does not make them public roads, since the dedication is a mere offer and the filing does not constitute an acceptance of the dedication. Commissioners' Court v. Frank Jester Development Co., 199 S.W.2d 1004, 1007 (Tex.Civ.App., Dallas, 1947, error ref. n.r.e.).

The parallel statute relating to the approval of plats of subdivisions by cities, Art. 974a, V.A.C.S., has been construed to the same effect. Young v. Jewish Welfare Federation of Dallas, 371 S.W.2d 767, 770 (Tex.Civ.App., Dallas, 1963, error ref. n.r. e.).

Indeed, the Supreme Court has recognized the rule that the mere filing of the plat does not amount to an acceptance by the governmental agency involved. In State v. Clark, 161 Tex. 10, 336 S.W.2d 612, 614 (1960), the Court said that "until there has been an acceptance the dedication may be withdrawn or modified." We would be remiss, however, if we failed to point out that the rights of purchasers of lots in Vicksburg are in no way before the court and we express no opinion as to their rights vis-a-vis those of the Developer. Cf., e. g., McLennan County v. Taylor, 96 S.W.2d 997, 999 (Tex.Civ.App., Waco, 1936, error dism.).

■ There is yet another reason why Developers' point complaining of the order overruling their plea in abatement for want of a necessary party defendant is without merit. The right to appeal from an interlocutory order in an injunction case may not be used as a vehicle to convey to this court for review other interlocutory orders which are not appealable. Justice Johnson, while upon the Court of Civil Appeals, reviewed the authorities on the subject in Bloomfield Royalty Corp. v. Carco Investments, Inc., 435 S.W.2d 178, 180 (Tex.Civ.App., Houston—14th Dist., 1968, error ref. n.r.e.), and we apply such rule to the points now under consideration. See also, Jernigan v. Jernigan, 467 S.W.2d 621, 625 (Tex.Civ.App., Beaumont, 1971, error dism.).

Having carefully reviewed the record and the points assigned by Developers and finding no reversible error, the judgment of the trial court granting the temporary mandatory injunction against the Developers, our Cause No. 7484, is in all things affirmed.

### 3. Langford's Venue Appeal

Langford is the professional engineer who designed and supervised the installation of the drainage system in the Vicks-

---

1. It is obvious that the developers, by this legal maneuver, sought the benefit of the decision in City of Houston v. Renault, Inc., 431 S.W.2d 322, 324 (Tex.1968), that the provisions of Art. 7589a, V.A. C.S., now § 5.086, Water Code, do not apply to municipal corporations.

burg Subdivision. Kraft charged in his pleadings that Langford *intentionally* designed the drainage system in Vicksburg so as to cause the surface waters to flow upon his lands to his great damage; that in so doing, Langford violated the provisions of § 5.086, Water Code, supra, with full knowledge of the consequential damages which plaintiff would suffer. For these acts, Kraft sought actual and exemplary damages and filed his suit *before* the work had been completed and Langford's contract with Developers had been accepted. He invoked Subdivisions 9 and 14 of Art. 1995, V.A.C.S., to maintain venue.

 Insofar as any factual differences exist in the record, we will follow the rule announced in James v. Drye, 159 Tex. 321, 320 S.W.2d 319, 323 (1959): "On appeal from an order overruling a plea of privilege every reasonable intendment must be resolved in favor of the trial court's judgment."

 Subdivision 9, Art. 1995, permits the maintenance of a suit in the county where the trespass was committed by the defendant; and " [u]pon the venue hearing, plaintiff must establish by a preponderance of the evidence (a) that a trespass has been committed; (b) that it was committed in the county of suit; and (c) that the defendant asserting his privilege committed the acts, *or that they were committed by another under circumstances that make the defendant legally responsible.*" 1 McDonald, Texas Civil Practice § 4.17.1, p. 473 (1965 Rev.Vol.). (emphasis supplied)

In Lusk v. Onstott, 161 S.W.2d 819, 821 (Tex.Civ.App., Amarillo, 1942, no writ), it was held that the affirmative act of digging a ditch and releasing water from his own farm to that of another was a trespass under statutory Subdivision 9 of the venue statute. In Meredith v. McClendon, 130 Tex. 527, 111 S.W.2d 1062, 1065 (1938),

the Court held that the act complained of " 'must be committed willfully, or the injury inflicted intentionally . . . . The act committed must be illegal, though it need not amount to a crime or an offense . . . . Nor need the intent to injure be directed towards the plaintiff.' " See also, City of Mineral Wells v. McDonald, 141 Tex. 113, 170 S.W.2d 466, 468 (1943).

The present Chief Justice, speaking for the Court in Gregg v. Delhi-Taylor Oil Corp., 162 Tex. 26, 344 S.W.2d 411, 416 (1961), said: "To constitute a trespass, 'entry upon another's land need not be in person, but may be made by causing or permitting a thing to cross the boundary of the premises.' Glade v. Dietert, 156 Tex. 382, 295 S.W.2d 642, at page 645, quoting from 87 C.J.S. Trespass § 13." See also, Railroad Commission of Texas v. Manziel, 361 S.W.2d 560, 567 (Tex.1962).

 The trial court found, with an abundance of supporting evidence, that large quantities of water were gathered in the drainage system designed and installed by the defendant upon the Vicksburg lands which flowed onto Kraft's lands to his damage. There was no showing of a personal invasion by Langford of Kraft's premises but it is equally clear that a large quantity of water crossed the boundaries of his premises through an instrumentality designed by Langford.

In Restatement (Second) of Torts § 158 (1965), "Liability for Intentional Intrusions on Land," the rule is set in this manner:

"One is subject to liability to another for trespass, irrespective of whether he thereby causes harm to any legally protected interest of the other, if he *intentionally*

"(a) enters land in the possession of the other, *or causes a thing or a third person to do so.*" (emphasis supplied) [2]

2. The original version of § 158, Restatement of Torts, was quoted by Judge Sharp in City of Mineral Wells v. Mc-

Donald, supra (170 S.W.2d 469). The section has likewise been relied upon in Glade v. Dietert, 156 Tex. 382, 295 S.W.

Langford seeks to avoid responsibility for the damage which Kraft has sustained through the trespass [the entry of the increased volume and accelerated flow of water through the drainage system which he designed] by contending that he relied upon the design of the subdivision prepared by the planning consultants. In his brief, he continues:

"[H]e [Langford] proceeded with design surveys, topographical surveys, plotting field information, developing contour maps, and preliminary and final design and plans and specifications for the streets and storm sewer facilities for Downing & Wooten."

An inspection of the topographical and contour maps entered in our record shows clearly that the storm sewer facilities were intentionally designed to collect the water from the entire area of Vicksburg and discharge it upon Kraft's premises notwithstanding the natural contours were such that at least a portion of the water would not have reached Kraft's lands. Langford's act in so designing the "facilities" was intentional; and, moreover, it was violative of § 5.086, Water Code.

 Langford relies upon the "accepted work" doctrine to avoid liability to Kraft and we reproduce in the margin his argument.[3] The first two of the cases cited by Langford were specifically overruled by Justice Norvell in Strakos v. Gehring, 360 S.W.2d 787, 790 (Tex.1962), and the latter by inference. Each was a negligence case, as was *Strakos*, and it would unduly extend this opinion to quote at length the enlightened reasoning of the Court which repudiated the old doctrine which had al-

ready become strangled by a myriad of exceptions. Had Kraft alleged negligence upon the part of Langford, *Strakos* would have been controlling.

Negligence was not alleged; instead, Kraft contented himself with alleging and proving an intentional invasion of his property by a willful act violative of the statute—the design and supervision of construction which caused the flooding of his lands. He sought a joint and several judgment against Langford and the Developers for the damage which resulted from the intentional and concerted acts of the two defendants. If the "accepted work" doctrine can no longer serve to insulate negligent conduct on the part of the independent contractor, there is even less reason to suppose that it will shield an intentional harm resulting from an affirmative act.

Although Langford does not rely upon the doctrine of Glade v. Dietert, supra (footnote 2), we are of the opinion that our case is readily distinguishable from cited opinion. There, the City's contractor, following implicitly City's plans and specifications, committed a trespass upon the lands of Dietert by bulldozing several trees upon Dietert's land. The Court recognized that both the contractor and City were trespassers, but liability was denied upon a practical consideration.

The contractor's job was not that of engineering or laying out of the project, but to do that which he was instructed to do. Here, it was Langford's job to do the engineering work and to lay out the project and to supervise the installation thereof. He was charged with knowledge that the Developers did not have the right of eminent domain and could not obtain, except

2d 642, 647 (1956); Michels v. Crouch, 122 S.W.2d 211, 214 (Tex.Civ.App., Eastland, 1938, no writ); and Fenley v. Ogletree, 277 S.W.2d 135, 148 (Tex.Civ. App., Beaumont, 1955, error ref. n. r. e.).

3. "Where, as here, an independent contractor performs services or commits acts which plausibly result in injury or damage to property of a third party, and those

acts have been completed and accepted by the owner, the contractor suffers no liability whatsoever to third parties. Jones v. Beck, 109 S.W.2d 787 (San Ant.Civ. App.1937, err. ref.); Hartford v. Coolidge-Locher Company, 314 S.W.2d 445 (San Ant.Civ.App.1958, no writ); Blickman v. Chilton, 114 S.W.2d 646 (Aus.Civ. App.1938, no writ)." (emphasis omitted)

by consensual purchase, the right to thrust the storm waters upon Kraft.

In Glade v. Dietert, the Court relied upon out-of-state cases for the proposition that the contractor was entitled to rely upon the public agency to obtain the necessary right-of-way for the project which it had designed and which he had agreed to construct. The Court reasoned that if the contractor were required to verify all the plans and specifications prepared by the public agency, the "cost of public improvements would be immeasurably increased." (295 S.W.2d at 644)

The Court commented freely upon the fact that City acquired the land upon which the trespass had been committed in eminent domain proceedings commenced very shortly after the trespass had been committed. Of course, no such similarity appears in the case at bar. Instead, Langford's work caused overflowing of the lands of Kraft; and, the servitude—the right to cast the excess waters upon Kraft not having been acquired by his principals —he must bear his portion of the damages caused by the joint acts of the parties.

■ We are not favorably impressed with Langford's argument that venue is controlled by Art. 4656, V.A.C.S., as interpreted by the Court in Brown v. Gulf Television Company, 157 Tex. 607, 306 S.W.2d 706 (1957). The primary and dominant purpose of Kraft's suit was for monetary damages to his land.[4] Kraft sought an ancillary injunction as defined in Lowe, 6 Texas Practice, Remedies § 156, p. 195 (2d Ed 1973). See also, Houston Oil Co. of Texas v. Village Mills Co., 109 Tex. 169, 202 S.W. 725, 226 S.W. 1075 (1918); City of Dallas v. Wright, 120 Tex. 190, 36 S.W.2d 973 (1931); City of Beaumont v. West, 484 S.W.2d 789 (Tex.Civ.App., Beaumont, 1972, error ref. n.r.e.).

Having reviewed carefully all of the challenges of Langford to the order overruling his plea of privilege and finding no reversible error, the judgment of the trial court in our Cause No. 7483 is affirmed.

We enter separate judgments in the two causes which we have reviewed in this single opinion: the judgment of the trial court in each instance is affirmed.

---

4. We had occasion recently to review some of the authorities on the subject of what is the dominant and primary purpose of a plaintiff's suit. McFarling v. Cavender, 469 S.W.2d 478, 480 fn. 3 (Tex.Civ.App., Beaumont, 1971, no writ).