EDWARD C. JAMES ET AL v. ROBERT W. DRYE ET AL.

No. A-6941. Decided January 14, 1959.
Rehearing overruled February 18, 1959.
(320 S.W. 2d Series 319)

*Patterson, McDaniel & Moore* and *Bennett B. Paterson,* all of Houston, for petitioners.

The Court of Civil Appeals erred in holding that the suit of plaintiffs below was a suit for the recovery of land as against the petitioners herein; also in sustaining venue in Hays County as against said petitioners. Smith v. Rampy, 198 S.W. 2d 592; Morris Plan Bank of Ft. Worth v. Ogden, 144 S.W. 2d 998; Fox v. Cone, 118 Texas 212, 13 S.W .2d 65; Richardson v. Cage, 113 Texas, 152, 252 S.W. 747.

*W. T. Barber,* of San Marcos, *Alvis Vandygriff* and *Gibson R. Randle,* both of Austin, for respondents.

MR. JUSTICE GRIFFIN delivered the opinion of the Court.

This cause is an appeal from an order of the trial court overruling a plea of privilege, and which action was affirmed by the Court of Civil Appeals. 314 S.W. 2d 417.

The parties will be referred to as they were in the trial court. Plaintiffs, Drye et ux and nine other husbands and wives, filed a suit in the District Court of Hays County, Texas, against petitioners, Edward C. James, Conso Realty Company, a corporation, residents of Harris County, Texas and Eagle Rock Corporation, alleged to be a dissolved corporation, but which was a resident of Hays County, Texas; and against C. B. Smith, a resident of Travis County, Texas, and Eagle Rock Ranch, succeeded by Eagle Rock Ranch, Inc., a corporation residing in Hays County, Texas. James, Conso Realty Company and Eagle

Rock Corporation will be called "James-defendants" and C. B. Smith and Eagle Rock Ranch, Inc. the "Smith-defendants."

■ This writ of error was granted because the holding of the Court of Civil Appeals that the suit was a suit for "the recovery of land" or "damages to land" under Section 14 of Article 1995; Revised Civil Statutes, is in conflict with the holding of the Courts of Civil Appeals in the following cases: Smith v. Rampy, 1946, 198 S.W. 2d 592; Morris Plan Bank of Fort Worth v. Ogden, Texas Civ. App., 1940, 144 S.W. 2d 998, and other similar cases. We approve the holding of the earlier cases that suits against former owners of land who have parted with all title prior to the filing of suit are not suits for "the recovery of land," or "damages to land" within the meaning of Section 14, Article 1995, Revised Civil Statutes, 1925. We have determined that Section 4 of Article 1995 is applicable to this cause and will sustain venue in Hays County, Texas.

Plaintiffs filed their suit for declaratory judgment against the James and Smith-defendants to remove cloud from title to their "easements," and, in the alternative, for damages against all defendants for the denial of the use of these easements in, on and over the Eagle Rock Ranch.

Plaintiffs alleged that in 1949 James individually owned the Eagle Rock Ranch, and pursuant to a plan and scheme of development organized and controlled Conso Realty Company and and Eagle Rock Corporation and Eagle Rock Club; that James conveyed and caused to be conveyed to Eagle Rock Corporation a portion of Eagle Rock Ranch; that Eagle Rock Corporation subdivided its land into Eagle Rock Ranchitos, Subdivisions 1, 2 and 3; that maps dedicating these "ranchitos" and the lots and blocks therein were filed for record in Hays County, Texas, and the properties were sold with reference to these maps and each deed incorporated by reference certain restrictions regarding the dedicated properties. These restrictions were contained in instruments executed by James as president of Eagle Rock Corporation in 1949 and in 1953 and duly recorded in Hays County, Texas; that one among the restrictions was that no person could become an owner of any part of the "ranchitos" without also becoming a member of Eagle Rock Club until 1974; that further restrictions provided that all owners of lots in the "ranchitos" should pay in to a maintenance fund $5.00 per lot per month. This fund was to go to Eagle Rock Corporation and after sale to the Smith-defendants was to be paid to Eagle Rock Ranch, Inc., and was to be administered by it for the benefit of the

lot owners. They alleged such maintenance payment was a vendor's lien against the lot. They alleged further that in pursuance of such development plan each and all of the James-defendants caused to be published and circulated to prospective buyers of lots in the "ranchitos" certain literature, excerpts of the language of which read as follows:

"While the property outside your own Ranchito is owned by a separate corporation, *Eagle Rock Ranch* members have an easement over the entire ranch. In other words, members of the club have all the pleasure rights over the entire ranch property. These rights are legally binding against any owner of the property for 25 years, and are subject to renewal after that time."

\* \* \*

"The most pertinent fact concerning Eagle Rock is *it's* unique philosophy of operation. Eagle Rock was founded upon the premise that countless numbers of average income families want an above average home in the hills—as a summer place, as a weekend holiday home or for general escapism whenever that need arises. Certainly the million dollar Eagle Rock Ranch is an above average investment; yet all of Eagle Rock actually becomes a part of your easement when you buy one of the existing ranch homes or buy a lot for construction of the home of your choice. That seems unbelievable until you have had an opportunity to study the facts and perhaps talk to some of the wonderful people who have already bought or built on Eagle Rock. As a part of this million dollar investment and yours to enjoy is a magnificent airconditioned clubhouse with game room, lounge, beauty shop, snack fountain, dining room, and 21 air-conditioned guest rooms each with private bath for those occasions when your guest problems become run-away. There is a modern paddock, swimming pool heated the year around, a nine hole pitch and putt golf course, tennis courts, a sweeping stream lined with tall shady pecan and walnut trees in which has been stocked literally thousands of blue-gill, bass and crappie."

Plaintiffs alleged that prior to the purchase of their properties in the "ranchitos" oral representations to the same effect were made by the agent in charge of the sales of the properties and that such agent took the prospective purchaser over a portion of the Ranch pointing out these various features to corroborate his representations. Plaintiff further alleged that after the purchase of lots and the erection of their respective homes on purchased properties, they and their families used, exercised

and enjoyed free access to the Ranch and clubhouse and grounds and the facilities thereof all in accordance with the printed literature shown them and the representations made to them. In June, 1957 the Smith-demendants closed the clubhouse and denied plaintiffs the right to use their so-called appurtenant easements in the Ranch. Plaintiffs alleged that the James-defendants sold the unsold portion of the Ranch and "ranchitos" to the Smith-defendants in April, 1955, and that the Smith-defendants had actual and constructive knowledge of the plaintiffs' easements and plaintiffs' actual use and enjoyment of such easements in, on and over the Ranch. Suit was brought against all defendants for an accounting of the sum of $13,000.00 alleged to have been collected as the maintenance fund. Plaintiffs further alleged that the James-defendant owed them the duty to inform the Smith-defendants of plaintiffs' rights and easements in the Ranch at the time of sale, but that the James-defendants failed to inform the Smith-defendants of plaintiffs' right and had specifically contracted with the Smith-defendants that no one other than the James-defendants had a lienholder had any right, title or claims in and on the Ranch, and that in the contract of sale, Edward C. James joined in the contract and individually guaranteed the performance of each and every covenant and condition of such contract.

Plaintiffs sued for themselves and as representatives of a class having similar rights and who, as a practical matter, were too numerous to name and make parties. Plaintiffs alleged that after the Smith-defendants succeeded to the title of the James-defendants, the Smith-defendants continued to distribute the James literature and to make similar representations to prospective purchasers. In the alternative, plaintiffs alleged that the action on the part of the Smith-defendants in denying plaintiffs their easements, and the action of the James-defendants in attempting to convey the Ranch and "ranchitos" and the Club to the Smith-defendants free and clear of plaintiffs' use of the Ranch and Club had lessened the value of the plaintiffs' properties in the "ranchitos" in an amount of $500,000.00 and sought damages for such amount against all defendants.

Each of the James-defendants filed pleas of privilege as to plaintiffs' suit and also as to the cross-action brought by the Smith-defendants. These pleas of privilege were amended and were duly controverted and a hearing had. Plaintiffs Drye et al filed their controverting affidavits to each of the pleas of privilege filed by the James-defendants. In each of these controverting pleas plaintiffs adopted their petition and incorporated the

same in the controverting affidavits "by reference for all purposes as though fully set forth therein." They alleged, by separate paragraphs, that exceptions 4, 14 and 29a of Article 1995, Revised Civil Statutes, applied and permitted the cause to be tried in Hays County, Texas. Under 4, plaintiffs alleged that they had a valid and bonafide cause of action against the defendants who resided in Hays County, Texas, and that their cause of action against the nonresident defendants grew "out of a series of closely related transactions which are so intimately connected that they should be joined in order to avoid a multiplicity of suits." They alleged the facts showing the nonresident defendants to be proper parties to their suit against the resident defendants. All parties and the trial court proceeded on the theory that the evidence introduced at the hearing was to be considered by the court in ruling upon all pleas of privilege.

Eagle Rock Ranch, Inc. filed its answer to plaintiffs' petition and urged certain pleas in abatement, and voluminous exceptions to each and every paragraph of plaintiffs' petition, general and special denials and other pleadings on the merits. Then Eagle Rock Ranch, Inc., becoming cross-plaintiffs, filed a cross-action against all of the plaintiffs and against Edward C. James, Conso Realty Company and Eagle Rock Corporation. As to the original plaintiffs the cross-action alleged they were claiming certain easements, restrictions, and other alleged rights in and to Eagle Rock Ranch properties; that some of the plaintiffs had filed for record in Hays County, Texas, an affidavit setting forth their claims so as to constitute a cloud upon, and a slander of, the title of the Smith-defendants; that sales of the ranch properties were prevented and caused depreciation of the value of the ranch properties in a sum of $350,000.00. The cross-action seeks recovery against the James-defendants for failure to give notice to the Smith-defendants at the time of the purchase by the Smith-defendants that plaintiffs were claiming the rights and easements in and to the ranch property; recovery is sought against the James-defendants for all damages suffered by the Smith-defendants in the event plaintiffs are successful in burdening the ranch properties with their claimed rights and easements. Prayer is for judgment cancelling and annulling the claims and easements of plaintiffs in the ranch properties, for removal of all clouds to the title of the Smith cross-plaintiffs to the ranch properties, and that their title be quieted, and for recovery of damages against all cross-defendants, for costs, etc.

We have carefully studied the record and without setting out in detail the evidence found in the 588-page Statement of

Facts, we hold there is evidence to support the allegations of plaintiffs as set out.

As to the James-defendants there is evidence that all of the James-defendants acted through Edward C. James; that all contracts and earnest moneys were submitted to him for approval and the cash payments on all sales sent to him; that James prepared in his own plant the literature delivered to prospective purchasers of lots in the "ranchitos;" that all three James-defendants acted in concert in carrying out the sale of properties either on the Ranch, or in the "ranchitos;" that James had sent to some prospective purchasers a portion of the literature; that he urged the sales agent to use the literature; and that he had knowledge of and encouraged the plaintiffs in the use of their so-called easements in, on and over the Ranch at the times he and his co-defendants owned same.

There is evidence to show that the Smith-defendants knew prior to their purchase of the properties in 1955 that plaintiffs were claiming the rights and privileges in the Ranch and club by virtue of the so-called easements; that after the Smith-defendants purchased the properties they permitted plaintiffs to use and enjoy their claimed easements in, on and over the Ranch and club until June 1957. The Ranch fences and gates were closed and locked by the Smith-defendants; the clubhouse padlocked, the swimming pool drained, the stables and airstrip closed to plaintiffs and plaintiffs' asserted rights were thus denied.

The dedicatory map to Eagle Rock Ranchitos No. 1 filed by James as president of Eagle Rock Corporation in 1949 shows a part of the facilities, use of which is claimed by plaintiffs located on the Ranch and clubhouse grounds. The plat shows three of the dams across Cypress Creek which are located on the Ranch. There were six dams across the Creek forming six pools, or lakes, use of which lakes was had by plaintiff prior to closing off access thereto in 1957.

On appeal from an order overruling a plea of privilege every reasonable intendment must be resolved in favor of the trial court's judgment. First. Nat. Bank of Millsap v. Ervin, Texas Civ. App., 1928, 12 S.W. 2d 269, no writ history; Porter v. Cluck, Texas Civ. App., 1929, 13 S.W. 2d 130, dism, w.o.j.; Read v. Luttrell, Texas Civ. App., 1949, 217 S.W. 2d 457, no writ history.

In Stockyards Nat. Bank v. Maples, 127 Texas 633, 95 S.W. 2d 1300, this Court, in answer to certified questions inquiring as to the allegations and proof necessary to sustain venue under Sec. 4, Art. 1995, said:

"The first of these two venue facts, that one of the defendants resides in the county where the suit is pending, must be proven by affirmative evidence upon the hearing. Proof of it is not made by, or by the introduction of the allegations of the petition or of the controverting affidavit. The other of the two venue facts named by the terms of exception 4, that is, that the suit is brought against two or more defendants, pertains to the nature of the suit. The reasonable inference is that a proper suit against two or more defendants is meant, that is, *a suit in which the defendants are properly joined.* It is essential that a plaintiff seeking to obtain the benefit of exception 4 allege in his petition a joint cause of action against the resident and nonresident defendants, *or a cause of action against the resident defendant so intimately connected with the cause of action alleged against the nonresident defendant that the two may be joined under the rules intended to avoid a multiplicity of suits * * *"* (Emphasis added.)

In the case at bar it is alleged and was proved that the defendants Eagle Rock Corporation and Eagle Rock Ranch, Inc. were each corporations whose principal place of business was in Hays County, Texas. The allegations and proof were sufficient to allege and establish a cause of action on behalf of plaintiffs against Eagle Rock Ranch, Inc. and also Eagle Rock Corporation and the other James-defendants for an accounting and also damages. The petition alleged a cause of action against resident defendants so intimately connected with the cause of action alleged against the nonresident defendants that it requires the two to be tried at one and the same trial in order to avoid a multiplicity of suits. McDonald, *Texas Civil Practice,* Vol. I, Sec. 4.10, pp. 339-341.

What has been said above has been in discussion of the hearing on the plea of privilege, and, of course, is no decision of any issues which may arise on the trials on the merits.

Judgment of the Court of Civil Appeals is affirmed.

Associate Justice Hamilton not sitting.

Opinion delivered January 14, 1959.

MR. JUSTICE SMITH, concurring.

I concur to the extent of agreeing with the result reached by the majority. It is with respect that I disagree with the holding that the suit is not one for the recovery of land or damages to land within the meaning of Subdivision 14,[1] of Article 1995, Vernon's Annotated Civil Statutes of Texas.

Venue in this case properly lies in Hays County under the mandatory provision of Subdivision 14, Article 1995, supra., therefore, we do not reach the question of whether venue lies in Hays County under Subdivision 4, Article 1995, supra.

The majority refers to a part of the pleadings, but I wish to refer to certain portions, which, in my judgment must be considered. It is well settled that where venue is claimed under Subdivision 14, the nature of the suit, that is, whether it is one for the recovery of lands, to remove encumbrances, or to quiet title, is determined only by a consideration of the whole of plaintiffs' pleadings. See Renwar Oil Corporation v. Lancaster, 154 Texas 311, 276 S.W. 2d 774; Pringle v. Southern Bankers Life Ins. Co., Texas Civ. App., 296 S.W. 2d 347, no writ history; Pickens v. Langford, Texas Civ. App., 270 S.W. 2d 285, wr. ref., n.r.e.

It is equally well established that the easements involved here as shown by the pleadings brings the suit within the contemplation of Subdivision 14, supra, and that such easements may be created by parol agreement or representation which has been so acted upon by others as to create an estoppel en pais. See Harrison v. Boring, 44 Texas 255; Wolf v. Brass, 72 Texas 133, 12 S.W. 159; Handal v. Cobo & Dosal, Texas Civ. App., 225 S.W. 67, wr. ref.; Hogue v. Glover, Texas Civ. App., 302 S.W. 2d 757, wr. ref., n.r.e. It is essential, of course, that under Subdivision 14 an interest in land be established by the plaintiffs, and then, of course, the only other venue fact is the location of the land. It is my contention that both of these essential elements have been established by the record. With these principles of law before us, I respectfully incorporate in this opinion parts of the pleadings for a better understanding of my position. Before doing so, however, I conclude the majority position, that the Court of Civil Appeals erred in holding that this is a suit

---

1.—"Lands.—Suits for the recovery of lands or damages thereto, or to remove encumbrances upon the title to land, or to quiet the title to land, or to prevent or stay waste on lands, *must* be brought in the county in which the land, or any part thereof, may lie." (Emphasis supplied).

for land, is based largely on its belief that such holding is in conflict with Smith v. Rampy, Amarillo Civ. App. 1946, 198 S.W. 2d 592; Morris Plan Bank of Fort Worth v. Ogden, Ft. Worth Civil App., 1940, 144 S.W. 2d 998. These cases are cited apparently as authority for the well recognized principle that suits against *former owners who have parted with all title prior to the filing of suit are not suits* for the "recovery of land" or "damages to land" within the meaning of Subdivision 14, Article 1995, supra.

The paragraphs of the plaintiffs' petition to which I specially refer read as follows:

"6.

"a.   Commencing with the date when each plaintiff bought a lot in one or more of the Eagle Rock Ranchitos, the James Defendants recognized the rights of the Plaintiffs to use and to exercise their rights, including easements, throughout the ranch and its facilities and continued to recognize and to honor Plaintiffs' exercise of such rights. In 1955 the Defendant Conso Realty Company conveyed to the Defendant corporation Eagle Rock Ranch the lands hereinabove referred to as the ranch by a deed dated April 13, 1955, and recorded in Volume 164, Page 272 Deed Records of Hays County, Texas. On the same date the Defendant Eagle Rock Corporation conveyed to Defendant Eagle Rock Ranch approximately 108 lots in the three sections of Eagle Rock Ranchitos, such conveyance being recorded at Volume 164, Page 270, Deed Records of said county. Both conveyances were made pursuant to a written contract between the grantors and Defendant C. B. Smith dated March 31, 1955, whereby he remained personally liable for the performance of the contract and for the performance of grantees' obligations, covenants and duties under said deeds.

"b.   From and after April 13, 1955, the Smith Defendants continued to recognize the rights of Plaintiffs to use the ranch and its facilities and recognized the rights of Plaintiffs to exercise their easement rights throughout the ranch and continued to recognize and to honor Plaintiffs' exercise of such rights until about June 1, 1957.

\* \* \*

"10.

"a.   Throughout this petition it has been alleged that the various representations, inducements and promises made to the Plaintiffs were made by the James Defendants and their duly authorized agents acting in the scope of their employment. Such

representations, inducements and promises were made up until the properties were sold and conveyed to the Smith Defendants. After such sale and conveyance the Smith Defendants as owners and acting through their duly authorized agents serving in the scope of their employment continued to make all of the same character of representations, inducements and promises to prospective lot purchasers as had been previously made by the James Defendants.

"b.   Those Plaintiffs who purchased after April 13, 1955, and other persons of the same class, relied upon such representations, inducements and promises which were similarly made by the Smith Defendants and but for which Plaintiffs would not have purchased their properties in and adjacent to Eagle Rock Ranchitos and would not have made valuable improvements.

"c.   Each of the Plaintiffs in purchasing a lot and in making valuable improvements on those lots which have been improved did so in reliance upon all of such representations and inducements by the respective Defendants. Each of the Defendants is estopped to deny the various easement and other rights herein alleged to exist.

## "11.

"Under and by virtue of the foregoing facts, Plaintiffs acquired easements appurtenant to the grants of their respective lots as to the areas and facilities shown on the said recorded plats and acquired easements appurtenant, easements by estoppel and licenses in writing and by estoppel throughout the ranch for outdoor recreational purposes, including swimming, fishing, tennis, golf, shuffle board, horseback riding, hiking, picnicking, nature study and other related outdoor sports and pursuits."

\*   \*   \*

## "14.

"In Cause No. 7313, styled Eagle Rock Ranch, et al, vs. Edward C. James, et al, now pending in the District Court of Hays County, Texas, the Smith Defendants, acting as Plaintiffs therein allege in substance that all of the lands involved herein, viz., the ranch and the lots (as hereinabove described) acquired by the Smith Defendants from James and his corporations were represented to be free and clear of all liens, encumbrances or other claims by any person except certain specific

liens and encumbrances set forth in the exhibits attached to Plaintiffs' Original Petition in that case. There then appears the express admission by C. B. Smith and Eagle Rock Ranch in said pleadings that various persons in the vicinity of the lands involved claim and own rights of entry, and other easements, for use of the ranch lands and that said easements and rights of entry are of numerous classes and kinds and that representative of the character of such easements are those set forth in a certain affidavit filed for record in Hays County, Texas. (The affidavit referred to is recorded at Volume 168, Page 187, Deed Records of Hays County, Texas, and was executed by various owners of lots in said subdivisions, including some of the Plaintiffs herein.)

This latter pleading refers to a suit brought by Smith against James et al. Plaintiffs introduced in evidence the Smith petition, which reads, as follows:

"Now come the plaintiffs, Eagle Rock Ranch and C. B. Smith and complain of the defendants, Edward C. James, Conso Realty Co., and Eagle Rock Corporation in this plaintiffs' original petition for the rescission and cancellation of certain instruments and conveyances, and in the alternative for damages, and respectfully show unto court:

"I.

"Plaintiffs are residents of Travis County, Texas, and plaintiffs Eagle Rock Ranch also resides in Hays County, Texas, being a corporation organized and existing under and by virtue of the laws of the State of Texas; defendant Edward C. James is a resident of Harris County, Texas, and the other defendants are corporations organized and existing under and by virtue of the laws of the State of Texas, and of each thereof Edward C. James is the President, and Conso Realty Co. is a resident of Harris County, Texas, and Eagle Rock Corporation is a resident of Hays County, Texas.

"II.

"Pursuant to the terms of a written contract dated March 31, 1955, executed by plaintiff C. B. Smith and the defendants Conso Realty Co., Eagle Rock Corporation and Edward C. James, and pursuant also to certain warranty deeds and other instruments executed April 13, 1955, by Conso Realty Co., Eagle Rock Ranch, Eagle Rock Corporation and C. B. Smith, all of which instruments are attached hereto and made a part hereof

as Exhibits A, B, C, D, and E, plaintiff, Eagle Rock Ranch became the owner of certain lands and improvements, livestock, ranch equipment, office equipment, and other personal property, for a valuable consideration, as set forth in said exhibits, including the assumption of the unpaid balance of one certain promissory note in the original principal sum of Two Hundred Six Thousand Two Hundred and Fifty Dollars ($206,250.00), executed by Conso Realty Co. to the order of the American National Bank of Austin, Texas, and including also the execution and delivery by plaintiff corporation of its vendor's lien note in the sum of Twenty Five Thousand Dollars ($25,000.00) payable to the order of Eagle Rock Corporation, such note being payable in installments, one in the amount of Eight Thousand Dollars (9,000.00) [sic] on one year from date of execution of said note; a second installment of Eight Thousand Dollars ($8,000.00) two years from said execution date; and a third and final installment of Nine Thousand Dollars ($9,000.00) three years from date of said execution.

## "III.

Plaintiffs show that at and prior to the execution of all of the aforesaid deeds and other instruments in writing, the defendants warranted, agreed, and represented as a fact (in writing as reflected by said Exhibits, and orally from time to time during negotiations leading up to the execution of such instruments, and by letters and correspondence, such oral representations and other representations in writing and warranties and agreements also being too numerous to plead, but all of which are well known to the defendants) that all of the real estate improvements, equipment and personal property aforesaid was free and clear of all liens and encumbrances of every character except certain specific liens and encumbrances set forth in said exhibits; and in this connection the plaintiffs would show that they were diligent in all things, and free of any negligence in relying, as they did rely at all pertinent times upon said representations, agreements, and warranties, and would not have made said contracts or executed of said instruments otherwise.

## "IV.

"Plaintiffs say that they have recently discovered that various persons in the vicinity of the lands involved (the names of which persons are too numerous to plead, but are well known to the defendants) claim and own rights of entry, and other easements, for use of the ranch lands set forth in the aforesaid exhibits and described therein, and by reason of which such

representations, agreements, and warranties have proved to be false and untrue, and plaintiffs say that said easements and rights of entry are of numerous classes and kinds and are well known to defendants, and no more particular pleading of their nature should be required, although in this connection, the plaintiffs would show that representative of the character of such easements are those set forth in a certain affidavit filed for record in Hays County, Texas, a true copy of which is attached hereto and made a part hereof as Exhibit F.

## "V."

"Plaintiffs say by reason of the aforesaid facts that plaintiffs are entitled to rescind, and hereby do rescind the transactions before mentioned, offering to do equity in the premises as the chancellor may direct; and in the alternative plaintiffs say that the reasonable market value of the properties transferred plaintiff corporation by defendants was, and is, at all pertinent times Two Hundred Fifty Thousand Dollars ($250,000.00) less than such value would have been had such properties been as represented, to plaintiffs' damage Two Hundred Fifty Thousand Dollars ($250,000.00), for which they here sue in the alternative in the event it be determined that rescission and cancellation should be denied.

"WHEREFORE, plaintiffs pray that the defendants be cited to appear and answer, and that upon trial they have judgment rescinding and cancelling the instruments hereinabove pleaded, and the transactions relating thereto, and for such incidental damages pursuant to and consistent with the remedy of rescission and cancellation as plaintiffs may show, and, in the alternative, plaintiffs sue for their damages at law in the sum of Two Hundred Fifty Thousand Dollars ($250,000.00) and for general relief and all costs of suit."

It is true, as stated by the majority, that plaintiffs alleged that the Smith-defendants had actual and constructive knowledge of the plaintiffs' easements, etc. However, I think it appropriate to point out that such pleadings were in the alternative.

It is clear to me at least that in view of the pleadings and proof, it necessarily follows that in determining venue, we cannot conclude as a matter of law that the petitioners (James Defendants) have parted with all their title. The law announced in the Rampy and Ogden cases, supra, have no application. The trial court's order, overruling the plea of privilege, recites that

the parties stipulated that all necessary preliminary, and procedural steps had been taken to bring all pleadings properly before the court, and that the court heard and considered evidence thereon. A part of this evidence was the Smith petition, alleging among other things, that they were diligent in all things pertaining to their purchase from the James Defendants and that they relied upon certain representations that the land was free of such claims now presented by the plaintiffs; that after the purchase, they learned of plaintiffs' claim of easements and rights of entry affecting the land involved. They further alleged that "* * * by reason of which such representations, agreements, and warranties have proved to be false and untrue * * *." Smith asked for cancellation of the deeds. I agree with the cases cited in the majority opinion which hold that on appeal from an order overruling a plea of privilege every reasonable intendment must be resolved in favor of the trial court's judgment.

Since the hearing was only on the plea of privilege, and was not a trial on the merits, we view the matter as though the deed had not been executed. This is true in view of the pleadings that James guaranteed the performance of each and every covenent and condition contained in the contract dated March 31, 1955, and further agreed that " ** * no right, by prescription or otherwise, is vested in any person or class of persons in any property sold hereby, * * *." Thus, James, by the execution of the Smith transaction created an encumbrance upon plaintiffs' titles making him a necessary party under Subdivision 14, supra. It, therefore, cannot be said that the James respondents are to be classed as "strangers to the title." When I refer to "James respondents" I mean to include the Eagle Rock Corporation and the Conso Realty Company.

Plaintiffs' petition not only discloses that the suit is one for the recovery of lands and to remove encumbrances upon the title created by respondents and to quiet title, but is also a suit for damages to land, the second mandatory ground of venue as to the nonresident defendants under Subdivision 14, supra. The damages alleged and claimed by petitioners result because of the acts and conduct as above discussed on the part of the petitioners in interfering with and cutting off plaintiffs' enjoyment and use of the lands. The petition reflects that there is a substantial loss in value to the lots and improvements thereon as a result of the denial of plaintiffs' easement rights. See Morris Plan Bank of Ft. Worth v. Ogden, supra; Tracy v. King, Texas Civ. App., 249 S.W. 2d 642; Rogers v. Scaling, Texas Civ. App., 285 S.W. 2d 259.

I think it would be more consistent with the record to hold venue in Hays County under Subdivision 14 solely, rather than Subdivision 4. For the reasons stated, the judgment of the Court of Civil Appeals should be affirmed.

Opinion delivered January 14, 1959.

Rehearing overruled February 18, 1959.