W. G. TUFTS AND SON et al., Appellants,

v.

HERIDER FARMS, INC., Appellee.

No. 517.

Court of Civil Appeals of Texas, Tyler.

Dec. 10, 1970.

Rehearing Denied Dec. 31, 1970.

Renfrow, Zeleskey, Cornelius, Rogers & Berry, William Sheehy Lufkin, for appellants.

Fairchild, Hunt & Price, John L. Price, Center, for appellee; Robert Fairchild, Center, of counsel.

McKAY, Justice.

This is a venue case. Appellee, Herider Farms, Inc. (hereinafter called Herider), brought this suit against W. G. Tufts and Son (hereinafter called Tufts), Granville Battles, and Chevron Chemical Company, for damages for the loss of twenty four head of cattle and diminution in value of twelve others, loss of hay, services of a veterinarian and damage to land. Both Tufts and Battles filed pleas of privilege, and after hearing, the trial court overruled both pleas. Both Tufts and Battles bring this appeal.

Tufts was shown by the record to be a private Texas Corporation, domiciled in Dallas County, and Battles was a salesman for Tufts, with residence in Nacogdoches County. Herider is a corporation domiciled in Shelby County where this suit was brought, with farmland involved herein also in Shelby County. In May 1969, Battles, employee of and representing Tufts, called upon Henry Miller, employee of Herider as purchasing agent and mill foreman, to sell items distributed by Tufts. During their conversation, according to Miller's testimony, Battles asked Miller where he was buying weed killer and at what price, and Miller told him. Then Battles replied that he could save him about 85 cents per gallon. Miller further testified he told Battles they were using formula 40 2,4D and then Battles said "he had the same stuff except under a different label." Miller testified he then asked Battles: "Now are you sure this is 2,4D and he said yes." The record shows Miller also testified he told Battles the said weed killer was to be used on pasture land.

Approximately a week after Miller ordered two 30-gallon drums of weed killer from Battles, the drums were delivered to the mill where Miller signed the receiving receipt and saw them sitting on the dock but never examined them nor read the labels. Another employee of Herider, Denver Goings, moved the drums of weed killer to the barn on the farm and instructed another employee, Barry Bailey, to mix and spray the weed killer the same as he had done with the previous brand. Bailey did so mix and spray the weed killer. Goings was told by Miller the weed killer was the same as they had been using but under a different label. Goings did not read the labels on the drums.

The weed killer was shipped directly from Chevron Chemical Company to Heri-

der and it was not 2,4D, but was ortho arsenical weed killer. It was sprayed by Bailey on about 10 acres of a 40-acre pasture. There were thirty six head of cattle in that pasture when it was sprayed, and these cattle remained there during and after the spraying. As noted above, twenty four head of these cattle died and the remaining twelve lived after treatment by a veterinarian. The improved grasses on that pasture where sprayed were also killed.

Miller testified he relied upon the representation of Battles that the weed killer was the same as 2,4D which he had used for several years; that he knew an arsenic base weed killer would be dangerous to grazing cattle; that he did not intend to order any arsenical weed killer; that cattle could continue to graze when formula 40 2,4D was used; that since Battles represented his weed killer to be 2,4D under another label, he did not know it was arsenical weed killer until the cattle died. Bailey, who did the spraying, testified he saw the label and the "skull and crossbones" and the words "arsenical weed killer" at the time he was getting the chemical out of the drum. He also said he read on the label "Poison, keep out of reach of children."

Battles testified that Miller asked him if he had 2,4D for sale and that he said no; that Miller asked what kind of weed killer he had and Battles replied he had ortho arsenical weed killer; that Miller ordered two drums and that Miller did not say where the weed killer would be applied and nothing was said about grazing cattle; that he, Battles, of his own knowledge did not know whether the arsenical weed killer would be dangerous to cattle without reading the label. Apparently, nothing was said between Miller and Battles at any time about whether cattle would be grazing the pasture at the time of or immediately after the application of the weed killer.

Appellants' point 1 complains that appellee, who was plaintiff below, failed to prove by a preponderance of the evidence a cause of action against Tufts.

Article 1995, sec. 23 [1], V.A.T.S., provides that suits against private corporations may be brought in the county in which the cause of action or part thereof arose. It follows that to establish venue under section 23, appellee had the burden of establishing that Tufts was a private corporation, that appellee had a cause of action against Tufts, and that such cause of action or part thereof arose in Shelby County. Admiral Motor Hotel of Texas, Inc. v. Community Inns of America, Inc., 389 S.W.2d 694 (Tex.Civ.App., Tyler, 1965, n.w.h.); Appell Petroleum Corp. v. G. W. Townsend Lease Service, 375 S.W.2d 547 (Tex.Civ.App., Corpus Christi, 1964, n.w.h.). The matter of Battles being an agent of Tufts is conceded, and the fact that Tufts is a private Texas Corporation is uncontradicted. The question here is whether appellee alleged and proved a cause of action against Tufts so as to retain venue in Shelby County.

There being no findings of fact or conclusions of law in the record, it is presumed that the trial court found all fact issues raised by the evidence in favor of the judgment. It is our duty to examine the testimony in the light most favorable to appellee and to indulge every reasonable inference in support of the judgment. Appell Petroleum Corp. v. Townsend Lease Service, supra. If the evidence is conflicting and there exists in the record evidence of sufficient probative force to support the judgment of the trial court, then the judgment should not be disturbed on appeal. Banks v. Collins, 152 Tex. 265, 257 S.W.2d 97 (1953).

---

1. "23. * * * Suits against a private corporation, association, or joint stock company may be brought * * * in the county in which the cause of action or part thereof arose * * *."

■ Measured by the above, the trial court's judgment must be affirmed. The trial court was the trier of the facts and under the record presented here, there was evidence of probative force to establish an express or implied warranty by the representation of Battles to Miller concerning the weed killer. The representation was made in Shelby County and the damages claimed by appellee occurred in Shelby County.

■ Appellants, in their very able Brief, cite some authority on the doctrine of strict liability to the effect that implied warranty would not apply when the product was misused. We do not believe this to be a strict liability case, inasmuch as there is no claim that the arsenical weed killer was a defective product. The claim here, as shown by the pleadings and the evidence, is that Battles represented the weed killer to be something that it was not; that Miller relied upon that representation and the injury resulted. From the evidence in the record, it was obvious that the arsenical weed killer was not the same product and did not have the same chemical properties as 2,4D. Failure of appellee or any of his agents or employees to read the labels and the instructions on the weed killer drums is a defensive issue which may defeat appellee on a trial of this case on the merits, but in this venue matter, appellee is not required to defeat affirmative defenses. McDonald's Texas Civil Practice, Sec. 4.30.2; Bradley v. Trinity State Bank, 118 Tex. 274, 14 S.W.2d 810 (1929); William R. Carmichael Inc. v. Winkley, 234 S.W.2d 937 (Tex.Civ.App., Austin, 1950, n.w.h.); Josey Miller Co. v. Wilson, 384 S.W.2d 231 (Tex.Civ.App., San Antonio, 1964, n.w.h.). In addition, the fact that Battles testified he did not make the alleged representation to Miller could also be believed by the trier of the facts in a trial on the merits to defeat appellee's claim.

■ On appeal from an order overruling a plea of privilege, every reasonable intendment must be resolved in favor of the trial court's judgment. James v. Drye, 159 Tex. 321, 320 S.W.2d 319 (1959); Langdeau v. Erwin, 367 S.W.2d 945 (Tex.Civ. App., Austin, 1963, writ dism.); H. E. B. Food Stores, Inc. v. Warncke, 444 S.W.2d 954 (Tex.Civ.App., San Antonio, 1969, n. w.h.). Appellants' points two through nine contending there is no evidence or insufficient evidence on the issue of negligence and proximate cause under section 9a, points 10 and 11 contending there was no evidence or insufficient evidence on the issue of damages to land under section 14, and points 12–15 contending there was no evidence or insufficient evidence on the issue of a crime committed under section 9 are not reached.

We are of the opinion that there was sufficient evidence of probative force for the trial court to find that there was a preponderance of the evidence that there was an express or an implied warranty made by Battles as an agent and representative of Tufts and that therefore the pleas of privilege of both Tufts and Battles were properly overruled.

The judgment of the trial court is affirmed.