**W. R. INGRAM, Appellant,**

v.

**D. C. RACHAL FORD, INC., Appellee.**

**No. 1122.**

Court of Civil Appeals of Texas, Corpus Christi.

Dec. 30, 1976.

Rehearing Denied Jan. 26, 1977.

H. H. Rankin, Jr., McAllen, for appellant.

John C. North, Jr., North, White & Blackmon, Corpus Christi, for appellee.

## OPINION

BISSETT, Justice.

This is a venue case. D. C. Rachal Ford, Inc. brought suit against W. R. Ingram for foreclosure of a security interest (and order of sale) on an automobile, which allegedly arose out of a written contract for the repair of the automobile. Suit was filed in Nueces County, Texas. W. R. Ingram duly filed a plea of privilege to be sued in Hidal-go County, Texas, where he was domiciled. D. C. Rachal Ford, Inc., hereinafter called "appellee", controverted the plea of privilege and asserted that venue was maintainable in Nueces County, Texas under Subdivisions 5(b) and 7 of Tex.Rev.Civ.Stat.Ann. art. 1995. The trial court, after a non-jury trial overruled the plea of privilege. W. R. Ingram, hereinafter called "appellant", has appealed.

Findings of fact and conclusions of law were neither requested nor filed. The appellant, in points 1 through 6, in summary, contends that there is neither legal nor factual basis for overruling his plea of privilege because the "appellee's proof did not show a written contract, but merely a parol agreement with a signed repair order", which cannot "suffice as a written contract for venue purposes". The appellee's position is that the proof shows conclusively that the action is "founded upon a contractual obligation of the appellant to pay money arising out of a consumer transaction for goods and services intended primarily for personal use which was signed by the appellant in Nueces County, Texas".

Subsection (b) of Subdivision 5 of Tex. Rev.Civ.Stat.Ann. art. 1995, enacted by Acts 1973, 63rd Legis, p. 489, ch. 213, § 1, effective August 27, 1973, reads as follows:

"(b) In an action founded upon a contractual obligation of the defendant to pay money arising out of or based upon a consumer transaction for goods, services, loans, or extensions of credit intended primarily for personal, family, household or agricultural use, suit by a creditor upon or by reason of such obligation may be brought against the defendant either in the county in which the defendant in fact signed the contract, or in the county in which the defendant resides at the time of the commencement of the action. No term or statement contained in an obligation described in this subsection shall constitute a waiver of this provision."

"Consumer goods" are defined by Tex. Bus. & Comm. Code Ann. § 9.109, as follows:

"Goods are

(1) 'consumer goods' if they are used or bought for use primarily for personal, family or household purposes;"

The appellant, on or about June 10, 1975, entered the appellee's place of business in Robstown, Nueces County, Texas, and discussed the matter of repairing his automobile that had been damaged in a collision which occurred near the appellee's place of business. The automobile sustained considerable visible damage, but neither the exact amount thereof nor the cost to repair the vehicle was then known, nor could those factors be established with any degree of certainty until further examination of the automobile had been made. The discussion which the appellant had was with Mr. Bob Lacey, a vice president of the appellee corporation. It lasted about an hour and a half. Lacey testified:

". . . We talked about his car and he said: 'fix it' . . . ."

Whereupon, Lacey obtained a copy of the appellee's printed "Repair Order" that had printed at the top "D. C. RACHAL FORD, INC., Box 1109, Robstown, Texas, 78380", and the same was then signed by the appellant in the appellee's place of business in Robstown, Texas.

The "Repair Order" is a printed form, which contains many blanks. The only blanks that were actually filled in at the time the order was signed by the appellant were those pertaining to the appellant's name, address, the make, year and model of the automobile. Later, the words "repair per estimate" were written in the order.

The following printed words appear at the bottom of the "Repair Order", immediately above the appellant's signature, to wit:

"I hereby authorize the above repair work to be done along with necessary materials. You and your employees may operate above vehicle for purposes of testing, inspection or delivery at my risk. An express mechanic's lien is acknowledged on above vehicle to secure the amount of repairs thereto. You will not be held responsible for loss or damage to vehicle or articles left in vehicle in case of fire, theft, accident or any other cause beyond your control."

Lacey further testified that the appellant indicated to him that the automobile was his car and was used by him for "personal services". With respect to exactly what was said at or about the time that the appellant signed the "Repair Order", Lacey, in response to the questions asked him, said:

"Q  Did he tell you to repair the automobile and signed at the time?

A  Yes sir.

Q  Signed that contract?

A  Yes sir.

Q  The repairs that you testified about did that include parts that were to be needed to repair the automobile, labor and other improvements?

A  Yes sir, it did. Our repair orders are repairs per estimate. It is impossible at the time that Mr. Ingram signed the repair order to sit down and itemize the repair order. In other words, we cannot tell what materials are to be used on that car until the job is completed. An estimate is only an estimate."

The repairs totalled $868.14. After the automobile had been repaired, the appellant called at the appellee's place of business, made a thorough examination of the automobile, and asked "for permission to road test the car". He assured Mr. James O'Steen, the appellee's service manager, that "he was going to take it a short distance and come back and settle matters with us". The appellant did not return with the automobile, nor did he pay the appellee anything on the repair bill.

■■  Where findings of fact and conclusions of law were neither requested nor filed, the trial court's judgment should be affirmed if it can be upheld on any legal theory finding support in the evidence. *Bishop v. Bishop*, 359 S.W.2d 869, 871 (Tex. Sup.1962); *Mobile County Mutual Insurance Company v. Jacobs*, 531 S.W.2d 436, 438 (Tex.Civ.App.—Corpus Christi 1975, no writ). Every issue of fact raised by the

evidence will be presumed to have been found in appellee's favor. See *James v. Drye,* 159 Tex. 321, 320 S.W.2d 319, 323 (1959).

■ The "Repair Order" is in writing. It expressly authorized the appellee to repair the automobile, which was particularly described therein. It expressed the intentions of the parties in such a manner as to be capable of understanding. *Bendalin v. Delgado,* 406 S.W.2d 897 (Tex.Sup.1966). It is sufficiently certain to enable a court to determine the legal obligations of the parties thereto, since the details thereof may be explained by the surrounding facts and circumstances. *Grimsley v. Life Ins. Co. of Virginia,* 154 S.W.2d 196 (Tex.Civ.App.—Austin 1941, writ ref'd w. o. m.); *McCaskey v. Schrock,* 225 S.W. 418 (Tex.Civ.App.—El Paso 1920, no writ); 13 Tex.Jur.2d, Contracts, § 99. Failure to specify in detail the repairs that were contemplated did not render the "Repair Order" ineffectual as a contract. The law implies that the repairs are to be made in accordance with what was reasonably necessary at the time the contract was made, and that the appellant is obligated to pay for such repairs. There is no contention that the repairs, as made, were not reasonably necessary. The "Repair Order", prepared and signed under the facts and circumstances noted, is sufficient to constitute a contract in writing between the parties which imposed upon the appellant a contractual obligation to pay money for the repairs requested by him. The contract was signed in Nueces County, Texas, and the repairs were made in Nueces County, Texas. The evidence that the automobile was owned by the appellant and was used by him for personal services is undisputed.

The transaction here covered is a consumer transaction governed and controlled by Tex.Rev.Civ.Stat.Ann. art. 1995, § 5(b). The trial court properly overruled the appellant's plea of privilege. Points 1 through 6 are overruled.

It is not necessary for us to consider Subdivision 7 of Tex.Rev.Civ.Stat.Ann. art. 1995, the other exception to the venue statute, which was urged by the appellee in the trial court. Therefore, we do not reach points 7 through 15.

The judgment of the trial court is AFFIRMED.