Dr. Victor LYDAY et ux., Appellants,

v.

Michael Jon MOORE et ux., Appellees.

No. 18025.

Court of Civil Appeals of Texas,
Fort Worth.

May 25, 1978.

Shannon, Gracey, Ratliff & Miller and
Bill E. Bowers, Fort Worth, for appellants.

John Linebarger, Fort Worth, for appel-
lees.

## OPINION

HUGHES, Justice.

Victor and Paula Lyday, husband and
wife, have appealed the order of the trial
court overruling their plea of privilege to be
sued in the county of their residence, Nac-
ogdoches. Michael Jon Moore and Pamela
Moore, husband and wife, had sued them in
Tarrant County under Tex.Bus. & Comm.
Code Ann. § 27.01 (1968), for water damage
occurring to a house in Fort Worth, Tarrant
County, Texas, which they had bought from
the Lydays. We shall refer to the Lydays
as Sellers and the Moores as Buyers.

We affirm.

Pertinent to this appeal is:

"Section 27.01. Fraud in Real Estate
and Stock Transactions

"(a) Fraud in a transaction involving
real estate or stock in a corporation or
joint stock company consists of a

"(1) false representation of a past or
existing material fact, when the false
representation is

"(A) made to a person for the purpose
of inducing that person to enter into a
contract; and

"(B) relied on by that person in enter-
ing into that contract; or
"  .   .  ."

and Tex.Rev.Civ.Stat.Ann. art. 1995 (1964),
which provided in pertinent part:

"Art. 1995 (1830) (1194) (1198) Venue,
general rule

"No person who is an inhabitant of this
State shall be sued out of the county in
which he has his domicile except in the
following cases:

"1.   .   .   .

"7. Fraud and defalcation.—In all cases of fraud, and in all cases of defalcation by public officers, suit may be brought in the county where the fraud was committed or where the defalcation occurred, or any of such suits may be brought where the defendant has his domicile.

" . . . "

Buyers pleaded § 7, above, in contravention of Sellers' plea of privilege and relied on the following direct testimony of Michael Moore, Buyer, to establish the representation required by § 27.01:

"Q I ask you whether or not you asked Doctor Lyday specific questions regarding the condition of the home or any problems?

"A Yes, Sir. I asked him if he had any problems with the drain in the back, water backing up into the lower level, or if the basement leaked or seeped water. I asked him if he had any roof problems, you know, things in general that might be wrong with the home.

"Q What did he reply as to the seepage of water and the water problems?

"A He said he had never had any problems with water seepage." (S.F. p. 7).

Sellers, who had lived in the house here involved for three and one-half years as of October 1, 1976, advertised it for sale by a sign in their front yard. Buyers inspected the house the morning of October 1 with Mrs. Lyday. They again inspected it that afternoon in company with Dr. Lyday, who, at that time made the representation here in issue when "He said he had never had any problems with water seepage." Buyers were particularly interested in the seepage angle because the 600–650 square feet den was below the soil surface and stated that they relied on Dr. Lyday's statement above quoted. Michael Moore said they would not have bought the house if they thought it seeped. Buyers bought and moved in around December 3, 1976. On March 27, 1977, after a steady, all night rain, Mr. Moore saw water coming into the lower level where the wall met the floor (in several places). Water appeared to be coming up under the floor and reached a depth of two inches, soaking the carpet, walls, paneling, and sheetrock. Mr. Moore said he had lived about a mile and a half to two miles from this house and had seen greater or lesser rainfalls in the last few years.

Mr. McMenamy, a waterproofer-sand blaster, called by Buyers, testified to having waterproofed the house for Buyers. He said water had come through the cracks in the walls and through the "cold joint" between the walls and floor.

McMenamy testified to finding rotten two by fours in the base of the wall and estimated it would take ten years for them to get in their rotten condition. He opined that such wall had leaked for seven years and that with rainfall similar to Fort Worth's over that time period it would be sufficient to cause water to come in the house. He could not determine whether or not the "cold joint" had been waterproofed before his inspection.

Mr. Moore testified to Dr. Lyday's having told him he had lived in the house about three and a half years.

Sellers, in their three points of error, contend there is no evidence and insufficient evidence to support a finding that Sellers' statement to Buyers that they had never had any problems with water seepage was false. Further, that there is no evidence that Sellers knew they had water seepage.

There being no findings of fact or conclusions of law we must view the evidence in the light most favorable to the judgment of the trial court. *Miller v. Cozart*, 394 S.W.2d 22 (Tex.Civ.App.—Dallas 1965, no writ). We must disregard all adverse evidence and give credit to evidence favorable to the successful party and indulge every reasonable conclusion that is favorable to same. *Kirby Lumber Corporation v. Treadway*, 382 S.W.2d 316 (Tex.Civ.App.—Beaumont 1964, writ dism'd). Every reasonable intendment must be resolved in favor of trial court's judgment. *James v. Drye*, 159 Tex. 321, 320 S.W.2d 319 (1959).

In view of McMenamy's opinion testimony of the seven years of seepage, based on the physical facts that he found, we hold that Buyers established by competent testimony, in part circumstantial, that seepage did occur in the time Sellers owned and lived in the house. *Patane v. Sartin*, 540 S.W.2d 422 (Tex.Civ.App.—Waco 1976, writ ref'd n. r. e.). This would establish the material representation of Sellers that they never had any problems with water seepage as false. Obviously, under the circumstances in this case, Sellers intended to induce Buyers to enter the contract of purchase. Buyers testified to their relying on the representation and to their resultant damage.

McMenamy's opinion testimony that the house had leaked for seven years prior to his inspection, that the rainfall in Fort Worth over that time period would be sufficient to cause water to come in the house, coupled with the undisputed testimony that Sellers lived in the house the last half of such seven year period, give rise to an inference that Sellers knew they had water seepage.

We overrule all three points of error and affirm the order of the trial court.