**MWJ PRODUCING COMPANY,**
Appellant,

v.

**Regina SPARKMAN, Individually and as Personal Representative of the Estate of Davy Sparkman, et al, Appellee.**

No. 13–83–028–CV.

Court of Appeals of Texas,
Corpus Christi.

May 26, 1983.

Rehearing Denied June 16, 1983.

David J. Dunn, Brin & Brin, P.C., Corpus Christi, for appellant.

Steve Q. McManus, Kilgore, Cole, McManus & Velasquez, Victoria, Darrell L. Barger, Kleberg, Dyer, Redford, & Weil, Corpus Christi, Melvin A. Krenek, Beckmann, Krenek, Olson & Quirk, San Antonio, for appellee.

Before BISSETT, UTTER and GONZALEZ, JJ.

OPINION

UTTER, Justice.

This is a plea of privilege case in which appellee successfully maintained venue in Bee County, Texas based on Tex.Rev.Civ. Stat.Ann. art. 1995, 4 (Vernon 1964). In its two points of error appellant, which was not a resident of Bee County, Texas, challenges the sufficiency of the evidence to support the trial court's decision to overrule the plea. We affirm.

In its first point of error, appellant contends that there was no evidence or, alter-

natively, factually insufficient evidence showing that appellee pleaded and proved by a preponderance of the evidence each element of a bona fide claim against the resident defendant, Fish Oil Well Servicing Company (hereafter designated "Fish").

■ Section 4 of Article 1995 states in pertinent part:

"If two or more defendants reside in different counties, suit may be brought in any county where one of the defendants resides."

The venue facts to be established under this subsection are:

(1) that at least one defendant resides in the county of suit;

(2) that the party asserting the privilege is at least a "proper" party to the claim against the resident defendant, and,

(3) proof by a preponderance of the evidence that the plaintiff has a bona fide claim against the resident defendant.

*Star Houston, Inc. v. Bloomfield,* 590 S.W.2d 631 (Tex.Civ.App.—Houston [1st Dist.] 1979, no writ).

■ Appellant stipulated that Fish was a resident of Bee County, and there is no contention that the parties in this case are not "proper" parties; therefore, the only venue fact affecting this case is whether appellee has proved that it has a bona fide claim against Fish, the resident defendant. In reviewing this action, we will not disturb the decision of the trial court if it is supported by evidence sufficient to establish the prima facie venue fact. *Susser Petroleum Company v. Latina Oil Corporation,* 574 S.W.2d 830 (Tex.Civ.App.—Texarkana 1978, no writ). Every reasonable intendment must be resolved in favor of the trial court's judgment. *James v. Drye,* 159 Tex. 321, 320 S.W.2d 319 (1959). A detailed summary of the facts and testimony adduced at the venue hearing follows.

Fish was hired by appellant to finish the process of "reworking" an oil well. Mr. Davy Sparkman and Mr. Danny Mitchell were performing their duties for their employer, City Oil Well Services, as "swabbers" at this location on June 4, 1981. Eye-witness testimony established that the swabbers had "rigged up" a flow line from the well bore to an earthen pit; that the well started flowing "real slow" and dark colored liquid began to flow out; that they were ordered to move the flow line from the earthen pit to a large "frac tank" that had been delivered that morning; and that, while moving the line, there was a "rotten egg smell." Mr. Ben Garcia testified that after the hose was hooked up to the frac tank, Mr. Mitchell borrowed a tape measure, presumably to try to measure the fluid in the frac tank; that, sometime later, he heard Mr. Sparkman, who was preparing to enter the tank, yell; that he therefore ran over to the frac tank and looked through the open hatch on top; that Mr. Sparkman was by that time "at the bottom [of the tank] kicking around, you know, like he was having an epileptic fit..."; that he saw vapor and smelled "[t]hat rotten egg smell"; and that he then entered the tank and unsuccessfully attempted to bring Mr. Sparkman out. Both Mr. Mitchell, who had previously entered the tank, and Mr. Sparkman died; Mr. Garcia was sent to the hospital and spent the night in intensive care, but was soon able to return to his duties.

Appellees sought to establish a cause of action against Fish for negligence mainly by relying on the testimony of their expert witness, Mr. George Greene. He testified that the well involved in this case was drilled in a geologic formation known as "Austin Chalk" and that he was familiar with that formation, that it was conducive to the production of hydrogen sulfide gas, that the presence of hydrogen sulfide gas in the Austin Chalk was generally known throughout the drilling industry, and that it was therefore very important for a drilling company to "take precautions for the sake of the personnel." Mr. Greene discussed some of the precautions which might be used, stated that all were known to Fish and should have been exercised because of the known propensity of finding hydrogen sulfide gas in the Austin Chalk, and opined that, when pumping into a closed tank, the tank should "absolutely" be tested before anyone is allowed to enter it. Having

heard testimony on the occurrences leading to the deaths of Mr. Sparkman and Mr. Mitchell, Mr. Greene stated that, based on his experience and knowledge, his opinion was that hydrogen sulfide gas was present within the frac tank.

On cross-examination, Mr. Greene further testified that a swabbing crew relied on the owners of the well to notify them if danger is present, and that it was not the swabbers' obligation to protect themselves from dangerous gases potentially present, since they frequently worked on a different well every day; that it was accepted industry practice to use testing equipment to check for hydrogen sulfide gas; that the drilling company had the primary obligation to test for gas because they were likely to have the testing equipment; that any time there was a possibility of the presence of hydrogen sulfide gas, as in the Austin Chalk, a failure to test for it endangered people's lives; and that, within a week or so of the time he was furnished information about the case, he formed the opinions that (1) hydrogen sulfide gas caused the deaths of Mr. Sparkman and Mr. Mitchell, and, (2) that "allowing personnel to go up on the frac tank without first monitoring that for the presence of hydrogen sulfide would certainly be negligent."

Dr. Ted Shields testified that he was familiar with hydrogen sulfide gas, knew that it was toxic and lethal and that, considering the testimony of the eyewitnesses, it was his opinion that the deaths of Mr. Sparkman and Mr. Mitchell were caused by hydrogen sulfide poison.

Mr. Donald Bendell testified that appellant requested that the well involved in this lawsuit be tested for hydrogen sulfide content; the results of tests performed on June 5, 1981 and June 25, 1981, established that the well contained lethal concentrations of the gas on those dates.

Mr. J.D. Fish, Vice-President of Fish, testified that the business of his company was "[p]rimarily workovers, well servicing, some light amount of drilling," and claimed that, for the well in question, his company was a "workover contractor." He admitted in his testimony that his company (1) was hired as "professionals in the well servicing business"; (2) was supposed to know what it was doing "in reference to the operation that [was] being done on this well when [the victims] died;" (3) was hired for its expertise and professional ability "to get the job done in that area"; (4) was expected "to conduct safe drilling operations for the safety of all persons involved." He further conceded that even though the hydrogen sulfide test took less than a minute or so to perform, Fish never tested it, even though the only way to know for sure whether a well produces hydrogen sulfide gas is to test for it.

Appellant contends that appellees' only possible cause of action against Fish was for failure to warn of the presence or possible presence of noxious gas, and argues that appellees' have not established their cause of action for negligence because they failed to prove the three elements of negligence—duty, breach, and damage. Specifically, appellant contends that (1) the only evidence presented by appellees' regarding Fish's duty to warn "was the testimony of the Plaintiffs' expert witness George Greene"; (2) that there was no testimony showing that Mr. Greene was qualified to give such an expert opinion; (3) that Mr. Greene's testimony was hearsay, and thus without probative value; and, (4) that the preponderance of the evidence was contrary to Mr. Greene's position.

Mr. Greene testified that he had been a licensed professional engineer for 14 years; that he was licensed by the State of Texas; that he received a mechanical engineering degree from Texas A & M University; that he had worked in the areas of safety engineering, accident reconstruction, and failure analysis for about 13 years; and that he had obtained about twenty patents in the oil and gas drilling industry.

■ "The qualification of an expert witness is a question for the trial court in the exercise of judicial discretion." *Classified Parking System v. Kirby,* 507 S.W.2d 586 (Tex.Civ.App.—Houston [14th Dist.] 1974, no writ). Similarly, in admitting ex-

pert testimony on custom, the trial judge must exercise his discretion. *Stanley v. Southern Pacific Company,* 466 S.W.2d 548 (Tex.1971). And in a non-jury action, the trial judge has the prerogative and responsibility to weigh the credibility of witnesses and the proof of the evidence. *Bormaster v. Henderson,* 624 S.W.2d 655 (Tex.Civ.App. —Houston [14th Dist.] 1981, no writ).

■ We note further that at the beginning of the hearing on the plea of privilege, appellee's counsel stated: "I have Mr. George Greene who is here as a technical expert . . . he will be testifying as an engineer." Appellant's counsel was aware of Mr. Greene's status; on cross-examination of Mr. Greene he argued that he was entitled to see Mr. Greene's file because "[h]e is an adverse expert witness." Appellant did not object to Mr. Greene's expert status, however, and thus did not preserve the error for review. The objection may not now be presented for the first time. *Houston National Bank v. Biber,* 613 S.W.2d 771 (Tex.Civ.App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.).

■ Appellant next argues that Mr. Greene's testimony was entirely hearsay because he stated that his opinions were based on information given to him, and that the evidence he adduced was therefore without probative value.

Appellant bases his contention on the following dialogue:

MR. GREENE: "I was asked to . . . render opinions about the circumstances that caused [the deaths of Mr. Mitchell and Mr. Sparkman].

    \*    \*    \*    \*    \*    \*

APPELLANT'S ATTORNEY: My question is what you based your opinion on before you walked into this Courtroom. MR. GREENE: On information given to me by [appellee's attorney]."

However, Mr. Greene's full testimony was that he was not only asked to render opinions, but also to review the circumstances causing the deaths of Mr. Mitchell and Mr. Sparkman. He stated that he also relied, among "other things", on the deposition testimony and the courtroom testimony, which included the eyewitness accounts. An expert is not confined to giving opinions on facts within his own knowledge; the entire theory upon which opinions of experts are received removes the requirement of actual personal knowledge as the basis of testimony, and the expert may properly give his opinion in response to hypothetical questions which embody facts in evidence *Classified Parking System v. Kirby, supra.* No error is shown.

■ Finally, in reviewing a "no evidence" point, this Court must consider only the evidence and inferences thereon tending to support the finding in question and disregard all evidence and inferences to the contrary. *Garza v. Alviar,* 395 S.W.2d 821 (Tex.1965); *Salazar v. Hill,* 551 S.W.2d 518 (Tex.Civ.App.—Corpus Christi, 1977, writ ref'd n.r.e.). In passing on factual sufficiency points, this Court must examine the entire record to determine whether there is any evidence of probative values to support the jury's findings. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951). Applying the above standards of review to the present action, we hold that the trial court did not abuse its discretion in finding that the preponderance of the evidence showed that the plea of privilege should be overruled.

■ In its second point of error, appellant notes that appellees alleged causes of action under both the Wrongful Death Act, Tex.Rev.Civ.Stat.Ann. arts. 4671–4678 (Vernon 1952; Vernon Supp.1982) and the Survival Statute, Tex.Rev.Civ.Stat.Ann. art. 5525 (Vernon 1958). Appellant concedes that appellees sustained their burden of proving damages under the Survival Statute, but contends that the evidence fails to prove damages against Fish under the Wrongful Death Act. Appellant further contends, with no citation of authority, that it is entitled to have appellees' claims based on both statutes transferred as requested by the plea of privilege. This assertion is without merit.

As previously stated, in order for appellees to establish their venue exception, they need only prove their venue facts. The only venue fact at issue in this case is whether appellees have a bona fide claim against Fish, the resident defendant. Appellant's argument under this assignment of error does not address whether appellees proved their cause of action, but rather attacks the claim against Fish for damages. Appellant's proper challenge to the claim for damages under the Wrongful Death Act must await trial on the merits. *Peters v. Parker*, 591 S.W.2d 327 (Tex.Civ.App.—Waco, 1979, writ dism'd).

Both of appellant's points of error are overruled and the judgment of the trial court is affirmed.